# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD STRONG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1917 JCH |
| | ) | |
| DONALD ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Richard Strong's Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"; Doc. No. 17). Because this Court has determined that Strong's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which Strong's claims are based, this Court decides this matter without an evidentiary hearing.

## BACKGROUND

Strong is incarcerated at the Potosi Correctional Center located in Mineral Point, Missouri pursuant to a conviction for the deaths of his former girlfriend, Eva Washington ("Eva"), and her daughter, Zandrea Thomas ("Zandrea"). On March 4, 2003, a jury found Strong guilty of two counts of murder in the first degree under Mo.Rev.Stat. §565.020. (Petition, pp. 1-2). On March 6, 2003, a jury assessed Strong's punishment at death on each count. (Petition, p. 2). On May 9, 2003, the Honorable Judge Gary M. Gaertner, Jr., Circuit Judge in the 22nd Circuit of Missouri, sentenced Strong to death in accordance with the jury's verdict. (Id.). Strong filed his notice of appeal with the Missouri Supreme Court on May 9, 2003. (Id.). On August 24, 2004, the Missouri Supreme Court affirmed Strong's convictions and death sentences. State v. Strong, 142 S.W. 3d

702 (Mo. banc 2004). Strong filed a petition for writ of certiorari in the United States Supreme Court, but his petition was denied on January 10, 2005. (Petition, p. 11; <u>Strong v. Missouri</u>, 543 U.S. 1059, 125 S. Ct. 872, 160 L. Ed. 2d 786, 2005 U.S. LEXIS 578 (2005)). On December 7, 2004, Strong filed a motion for post-conviction relief pursuant to Mo.S.Ct.R. 29.15 in the Circuit Court of the County of St. Louis, State of Missouri. (Petition, p. 11).[1] On December 14, 2006, Judge Gaertner denied Petitioner's 29.15 motion for post-conviction relief after an evidentiary hearing. (Petition, p. 21). On January 22, 2007, Petitioner filed a notice of appeal to the Missouri Supreme Court from the denial of his Mo.S.Ct.R. 29.15 motion. (<u>Id.</u>). On July 31, 2008, the Missouri Supreme Court affirmed the lower court's denial of post-conviction relief. (Petition, p. 24; <u>Strong v. State</u>, 263 S.W.3d 636 (Mo. 2008)). On December 23, 2008, Strong filed a writ of certiorari with the United States Supreme Court; the writ was denied on March 30, 2009. (Petition, p. 25; <u>Strong v. Missouri</u>, 2009 U.S. LEXIS 2450 (Mar. 30, 2009)).

On September 29, 2009, Strong filed the instant Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Doc. No. 17). Respondent filed his Response on November 25, 2009 (Doc. No. 22), and Strong filed a Traverse on March 17, 2010 (Doc. No. 30).

---

[1]Rule 29.15 provides that

A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated. The procedure to be followed for motions filed pursuant to this Rule 29.15 is governed by the rules of civil procedure insofar as applicable.

Mo. Supreme Court Rule 29.15(a).

# STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. 362, 412 (2000). "'A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result.'" Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)).

A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

context where it should apply." Williams, 529 U.S. at 405. A court may not grant relief merely because it concludes that the state court applied established federal law incorrectly; instead, the application must also be unreasonable. Id. at 411. A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 791 (8th Cir. 2004).

An application for a writ of habeas corpus may also be granted if any claim adjudicated on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. Id. at § 2254(e)(1); see Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) (state court decision unreasonable only if showing made that factual findings do not enjoy support in the record); Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001) (factual determination of state court presumed correct).

The habeas review applies to any claim "that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "The Eighth Circuit noted that the determination as to whether a claim was adjudicated on the merits in state court requires a court to 'look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.'" Barnett v. Roper, No. 4:03CV00614, 2006 U.S. Dist. LEXIS 60130, at *23 (E.D. Mo. Aug. 24, 2006)(quoting Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004)). Federal courts are bound to exercise only limited and deferential review of underlying state court decisions in habeas corpus cases. Barnett v. Roper, 2006 U.S. Dist. LEXIS 60130, at *24; Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004); Luebbers, 359 F.3d at 1011.

# FACTUAL BACKGROUND

In habeas corpus proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).[2] Accordingly, the facts in this case are as follows:

St. Ann police received a 911 call on October 23, 2000, at 3:30 p.m. The call was immediately disconnected. The dispatcher replayed the call and heard a scream. The dispatcher tried to redial the number repeatedly until officers arrived at the source of the call approximately two minutes later. The call originated from the apartment where Eva lived with her two daughters. The older daughter, Zandrea Thomas, was two years old. Strong is the father of the other girl, who was three months old.

When officers arrived at the apartment and knocked, initially there was no answer at the front or back door. They continued to knock and shouted, and Strong eventually came to the back door. Upon inquiries by the police, Strong initially told them Eva and the kids were sleeping. Strong meanwhile stepped outside and closed the door behind him.

The police again asked about Eva, and Strong told them she had gone to work. Because this was an inconsistent response, the police asked about the children, and Strong told them the kids were inside. The officers asked if they could check on the children, and Strong told them he had locked himself out.[3] Strong knocked on the door and called for someone to open it.

Officers noted that Strong was sweating profusely, had dark stains on the knees of his jeans, and had blood on his left hand. They ordered Strong to step aside and kicked in the door. Strong ran. When the officers chased him, Strong told them, "Just shoot me; just shoot me." After he was handcuffed, he told the officers, "I killed them."[4]

---

[2]Moreover, the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Because Strong has set forth no clear and convincing evidence challenging the state courts' findings of fact, the Court accepts the facts as stated by the Missouri Supreme Court in State v. Strong, 142 S.W.3d 702.

[3]After his arrest, officers inventoried the contents of Strong's pockets and found a set of keys. When they returned to the scene, they discovered that one of those keys unlocked the front and back doors to Eva's apartment.

[4]Although it was not introduced into evidence at his trial, the following exchange was included in the record on appeal. This conversation between the trial court and Strong occurred at a pretrial hearing during which Strong testified under oath:

Inside the apartment, police found the dead bodies of Eva and Zandrea in a back bedroom. They had been stabbed repeatedly with a knife. On the bed, one of the officers found a large butcher knife and a three-month-old baby sitting next to a pool of blood. An autopsy revealed that Eva had been stabbed 21 times, with five slash wounds, and the tip of the knife used to stab her was embedded in her skull. The autopsy of two-year-old Zandrea showed she had been stabbed nine times and had 12 slash wounds.

Strong was charged with both murders. After a trial in St. Louis County, a jury returned a guilty verdict. At the penalty phase trial, the jury found the existence of two statutory aggravators for each murder[5] and recommended a death sentence for Strong. The trial court sentenced Strong accordingly.

State v. Strong, 142 S.W.3d 709-10.

---

The Court: And the Court here today is indicating to you vehemently, as strongly as I can talk to you and tell you, that you should not plead guilty but should go to trial. Do you understand that?

Strong: No.

The Court: What don't you understand in that statement, sir?

Strong: If you want to offer me the death penalty and I'm willing to accept it, why don't you understand?

. . . .

The Court: You do not want a trial to determine whether you're innocent or guilty of these crimes?

Strong: I know I'm guilty.

Following his guilt and penalty phase trials, Strong's counsel argued in a motion for new trial that the trial court erred in refusing to accept Strong's guilty plea and his request for the death penalty, but Strong did not raise this issue on appeal.

[5]The jury found that the murders were committed while Strong was engaged in the commission of another unlawful homicide and that the murders were "outrageously or wantonly vile, horrible or inhuman," as defined by the applicable instruction. See sec. 565.032.2(2), (7), RSMo 2000.

# DISCUSSION

Strong raises numerous grounds for relief in his Application for Habeas Corpus Under 28 U.S.C. § 2254. Each of the grounds will be discussed in turn, but none provides a basis for reversal. Strong's petition is denied.

## I. Violation of the Fifth Amendment Indictment Clause[6]

Strong claims that the indictment did not charge a capital offense because the indictment did not include at least one of the statutory aggravating circumstances listed in Mo.Rev.Stat. §565.032 (2000).[7] (Petition, p. 26). Under Missouri law, an indictment must contain a plain statement of the elements of the offense, including "the facts necessary for an enhanced punishment." Mo. Sup. Ct. R. 23.01(b)(2); Traverse, p. 3).

In response, the State asserts that failure to include any of the statutory aggravating circumstances in the indictment does not entitle Strong to relief. The Missouri Supreme Court held accordingly:

> This Court has repeatedly held that statutory aggravating circumstances need not be pleaded in the information or indictment. State v. Glass, 136 S.W.3d 496, 513 (Mo. banc 2004); State v. Edwards, 116 S.W.3d 511, 543-44 (Mo. banc 2003); State v. Gilbert, 103 S.W.3d 743, 747 (Mo. banc 2003); State v. Tisius, 92 S.W.3d 751, 766-67 (Mo. banc 2002); State v. Cole, 71 S.W.3d 163, 171 (Mo. banc 2002). Pursuant to section 565.005.1, the state is required to give to the defendant, "at a reasonable time before the commencement of the first stage of any trial of murder in the first degree," notice of the statutory aggravating circumstances it intends to submit in the event the defendant is convicted of first degree murder. Notice of

---

[6]In his Traverse, Strong describes this claim as "failure to charge a capital offense." (Traverse, p. 3). Strong states that he initially mislabeled his claim and that this claim instead sets forth that he was charged with one offense and convicted of another. (Traverse, p. 5, n. 1).

[7]See Mo.Rev.Stat. §565.032.1(1) provides that "[i]n all cases of murder in the first degree for which the death penalty is authorized, the judge in a jury-waived trial shall consider, or he shall include in his instructions to the jury for it to consider [w]hether a statutory aggravating circumstance or circumstances enumerated in subsection 2 of this section is established by the evidence beyond a reasonable doubt[.]"

statutory aggravating circumstances suffices in lieu of charging them in the information or indictment. Edwards, 116 S.W.3d at 543.

The assertion that this Court's holding violates [Ring v. Arizona, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002); Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); and Jones v. United States, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999)] has also been denied previously. Glass, 136 S.W.3d at 513. Strong further attempts to rely on United States v. Allen, 357 F.3d 745 (8th Cir. 2004). Allen offers no support, however, as it has been vacated and scheduled for rehearing en banc.

The state filed its indictment on November 30, 2000, its notice of aggravating circumstances on March 20, 2001, and its information in lieu of indictment on April 30, 2002. Strong's guilt phase trial began February 26, 2003, and his penalty phase trial began on March 5, 2003. As such, he received nearly two years' notice that the state intended to prove the statutory aggravators in section 565.032.2(2) and (7), that the "offense was committed while [Strong] was engaged in the commission or attempted commission of another unlawful homicide" and that the "murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind" as to both Eva and Zandrea.

State v. Strong, 142 S.W.3d 702, 711-712 (Mo. 2004).

First, the State asserts that it provided sufficient notice of aggravating factors to Strong that it was going to seek the death penalty even though they were not included in the indictment. Strong never disputes that he received notice of the statutory aggravating factors. Instead he asserts that failure to include these aggravators in the charge violates the Fifth Amendment Indictment Clause. (Petition, pp. 26-27).[8] Fifth Amendment, however, applies only to the federal government, not the States. United States v. Allen, 406 F.3d 940, 942 (8th Cir. 2005)("the Fifth Amendment's grand jury requirement has not been construed to apply to the states"); see also Traverse, p. 5 (Strong admits that the Fifth Amendment Indictment Clause is not applicable to the states and "doesn't require a

---

[8]The Fifth Amendment provides, in relevant part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger..." U.S. Const. amend. V.

state to proceed by way of indictment."). Thus, Strong's claim fails as the Fifth Amendment indictment clause protections do not apply to state prosecutions.

Nevertheless, Strong argues that because the State charged him by way of indictment, he had a "due process right that a grand jury composed of Missouri citizens would hear testimony and decide, independently of the prosecutor, which offenses to charge." (Traverse, p, 5 (citing Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)). "Only the Sixth Amendment requirement that the accused 'be informed of the nature and cause of the accusation' has been applied to the states through the Fourteenth Amendment." Glass, 136 S.W.3d at 513 (quoting Blair v. Armontrout, 916 F.2d 1310, 1329 (8th Cir. 1990)). Contrary to Strong's all or nothing approach, "legally insufficient charging documents have been held not to violate the Sixth Amendment when the defendant received actual notice of the charge against him." Glass, 136 S.W.3d at 513 (citing Hartman v. Lee, 283 F.3d 190, 195, n.4 (4th Cir. 2002)). Here, the Court finds no due process violation because Strong received notice of the aggravating factors with sufficient time to prepare for trial. As noted in Glass, this holding does not violate Ring, Apprendi, and Jones, because those cases "held that aggravating factors operate as 'the functional equivalent of an element of a greater offense' insofar as the Sixth Amendment requires that they be found by a jury, but made no holding as to whether they must be included in the indictment." 136 S.W.3d at 513 (citing Ring, 536 U.S. at 609; Apprendi, 530 U.S. at 477, n.3). Thus, the Court finds that Strong received actual notice of the aggravating factors and he was convicted of those charges by a jury, which was sufficient under the Sixth and Fourteenth Amendments.

Finally, the State argues that, even if the statutory aggravators should have been included in the indictment, the failure to include these aggravators was harmless error. (Response, p. 11).[9] Strong claims that this was not harmless error because he was convicted of a different offense than that charged by the grand jury. (Traverse, pp. 5-6). According to Strong, to hold otherwise would render meaningless the right to a grand jury under Missouri law. (Id.).

The Court agrees with the Missouri Supreme Court that the failure to charge Strong with an aggravator was harmless error, if error at all. Strong received notice of the aggravators on or around March 20, 2001, nearly two years before trial. See Notice of Evidence of Aggravation (Resp. Ex. E, p. 59, 61) and State v. Strong, 142 S.W. 3d at 712. Strong has not shown any prejudice from not receiving the aggravators in the original indictment. The Court finds that Strong was not prejudiced and any error was harmless. Strong's claim on this point is denied.

## II.     Batson Violations

The prosecutor used peremptory challenges to strike two African-American venirepersons, Luke Bobo and Sylvia Stevenson. Strong claims that the strikes violated Batson v. Kentucky, 476 U.S. 79 (1980) because (1) the prosecutor's "race neutral" reasons for striking Bobo and Stevenson were pretextual, and (2) the prosecutor's strikes were based on Bobo's and Stevenson's race and religious beliefs.

### A.     Background of Venireperson Sylvia Stevenson

Venireperson Sylvia Stevenson is an African-American woman with no minor children. She stated that she was open to both the death penalty and life imprisonment as punishments, depending

---

[9]In U.S. v. Allen, the Eighth Circuit held that in federal death penalty prosecutions, "the Fifth Amendment requires at least one statutory aggravating factor and the *mens rea* requirement to be found by the grand jury and charged in the indictment." 406 F.3d at 943. The Allen court held that failure to charge at least one statutory aggravating factor and the mens rea requirement is not a structural defect and is analyzed for harmless error. Id. at 945.

on the facts. She stated that her brother was in the penitentiary for stealing, but she knew little of her brother's situation and it would not influence her decision in Strong's case. She also mentioned that a member of her church was affiliated with the Division of Family Services.

The state moved to strike peremptorily Ms. Stevenson. In response to a <u>Batson</u> challenge, the state stated that he struck Ms. Stevenson because (1) she had no minor children; (2) her brother was in prison; (3) she was annoyed that they were sequestered; (4) she was weak on the death penalty; and (5) she was a religious person. (Petition, p. 27). Strong argues that all of these arguments are pretextual because the State did not strike similarly situated individuals or. First, with respect to the minor children, the prosecutor did not strike white venirepersons Kimberly Keachie, Donald Moreland, and Priscilla Schmidt, who also did not have minor children. Second, with respect to having a brother in prison, the prosecutor did not strike venireperson Kelly Sullivan whose relative was killed the year before by her husband, or venireperson Keachie whose friend was in prison for manslaughter. Next, regarding the claim that Stevenson was annoyed about sequestration, the record is devoid of any mention that Stevenson's body language or facial expressions reflected that she was upset when sequestration was discussed. Then, in response to the claim that she was weak on the death penalty, Stevenson stated that she could impose either the death penalty or life without parole, depending on the facts. Finally, although the prosecutor hypothesized that because Ms. Stevenson was religious, then she must be weak on the death penalty, Ms. Stevenson stated that she belonged to a church, but did not state that she was opposed to the death penalty.

The Missouri Supreme Court affirmed the trial court's determination regarding Stevenson and found no evidence of pretext. The Missouri Supreme Court found:

> As to the prosecutor's claim that he struck venireperson Stevenson because she had no young children, Strong attempted to show pretext by arguing that three similarly situated white jurors were not struck. The prosecutor distinguished these jurors from Stevenson. He said one of them was a young teacher who works with

children. Two of the other venirepersons had served previously on a jury, were "strong on the death penalty," and had "no hesitation" in imposing it. Other factors for these jurors, according to the prosecutor, outweighed the fact that they did not have minor children. The trial court stated that whether a juror had young children was "an extremely important factor" because the trial involved the alleged murder of a two-year-old child.

Strong next claims that the prosecutor's explanation for striking Stevenson because she was "particularly unhappy" about sequestration was pretextual because no record was made of her body language or facial expressions when they were observed. The trial court, however, noted that Stevenson displayed "physical disdain" regarding sequestration. Strong never argued, during voir dire or in his appellate brief, that these observations were faulty. The trial court's acceptance of this reason was not "clearly erroneous." See State v. Gray, 887 S.W.2d 369, 384 (Mo. banc 1994).

Strong next contends that striking Stevenson because she "mentioned church and religion" and stated that "one of the members of [her] church" is a manager for the Division of Family Services was pretextual. The prosecutor stated that Stevenson's religious beliefs possibly indicated "another reason she may very well be weak on the death penalty." Strong argues in his brief that the prosecutor "violated equal protection by predicating [his] excuse upon her religious affiliation." At trial, however, Strong never raised this argument and instead chose to oppose the prosecutor's statement that Stevenson was not strong on the death penalty. A constitutional argument must be raised before the trial court or it is waived. See [State v. Chambers, 891 S.W.2d 93, 103-04 (Mo. banc 1994)]. Furthermore, Strong has not established that this was plain error. See Rule 30.20.

Strong next claims the prosecutor's decision to strike Stevenson because she was "particularly weak on the death sentence" was pretextual. The record reflects that Stevenson was asked whether she "would be able to consider both forms of punishment," namely life in prison and the death penalty. She responded: "I think it's circumstantial, too. You can't make a decision without hearing the facts, so my opinion, if the facts say so, then I wouldn't have a problem with it. But if the facts don't say it, I cannot go that route." In a followup question, Stevenson said she would be able to consider both forms of punishment equally.

The record reveals that venirepersons Vance and Neal, whose responses were similar to Stevenson's, served on the jury. But venirepersons Pirrone and Teson, who were peremptorily stricken for reasons not revealed by the record, replied similarly to Stevenson and stated that their decision to impose the death penalty would depend on the circumstances. In other words, the record is ambiguous with respect to this justification by the prosecutor.

The prosecutor enunciated several reasons why he exercised a peremptory strike for Stevenson. Although some of the justifications are stronger than others, the totality of the circumstances establishes that the trial court did not clearly err by

allowing the prosecutor's peremptory challenge of venireperson Stevenson. See [State v. Marlowe, 89 S.W.3d 464, 470 (Mo. banc 2002)].

State v. Strong, 142 S.W.3d 702, 713-14 (Mo. 2004).

B.    Background of Venireperson Luke Bobo

Venireperson Luke Bobo, African-American male, stated that he could impose life without parole or death as punishment in first degree murder cases.  Mr. Bobo had a second cousin who was shot several years earlier in Kansas City and another cousin convicted of murder.  Mr. Bobo stated that these incidents would not affect his ability to be fair and impartial because he was "so far removed from both occasions."

The state moved to strike peremptorily Mr. Bobo.  In response to a Batson challenge, the state stated that he struck Mr. Bobo because 1) his cousin was in prison for murder and 2) Mr. Bobo was an assistant seminary dean and he did not want a religious person on the jury.  Strong claims that similarly-situated white venirepersons were not struck.  First, with respect to the claim that Bobo had a cousin in prison, the prosecutor did not strike Kelly Sullivan, a white juror,  whose mother-in-law's cousin was killed last year by her husband.  Next, regarding Bobo's religion, the prosecutor did not strike Martin McCabe, a white juror, who taught at St. Louis Priory, a parochial school.  (Petition, pp. 28-29).

The Missouri Supreme Court affirmed the trial court's determination regarding Mr. Bobo and found no evidence of pretext.  The Missouri Supreme Court found:

> Strong alleges the prosecutor's peremptory strike of venireperson Bobo was pretextual. The prosecutor claimed he struck Bobo primarily because he is the assistant dean of Covenant Seminary, because  he had a cousin who was convicted of murder and was incarcerated for that crime, and because Bobo was not as strong on the death penalty as the prosecutor would have preferred. Strong argued that the prosecutor overlooked a similarly employed white venireperson, Bobo's cousin in jail was a distant relative, and Bobo had responded previously that he could impose the death sentence.

In permitting the prosecutor's strike, the trial court stated the most important reason articulated was Bobo's job as an assistant dean at an institution "teaching individuals to go into religious training." Strong argued that venireperson McCabe was similarly situated to Bobo because McCabe had retired from teaching at a parochial school. As the trial court found, however, teaching students at a private high school differs from training individuals for a religious vocation.

Moreover, the fact that Bobo had a cousin in jail for murder differentiated him from McCabe. When asked whether he was "so far removed from [his cousin's conviction] that [he didn't] know whether or not the sentence [his cousin] received was considered fair or not fair," Bobo initially responded, "Well, of course his mother believes that he was set up." The trial court did not commit clear error in permitting the prosecutor's peremptory strike predicated in part on this ground.

Strong attempts in his brief to argue that the dismissal of a juror on the ground that a religious person would be less likely to impose the death penalty violates Article I, section 5 of the Missouri Constitution. Strong failed to raise this claim before the trial court, and it is not preserved for appellate review. See State v. Chambers, 891 S.W.2d 93, 103-04 (Mo. banc 1994). Neither has Strong demonstrated plain error. See Rule 30.20. The trial court did not clearly err in permitting the prosecutor's peremptory strike of venireperson Bobo.

State v. Strong, 142 S.W.3d 702, 712-13 (Mo. 2004).

C.     Application

There is a three-part process for evaluating claims that a prosecutor used peremptory challenges in violation of Batson and the Equal Protection Clause.

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. ... Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. ... Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Miller-El v. Cockrell, 537 U.S. 322, 328-29 (2003)(internal citations omitted); Hernandez v. New York, 500 U.S. 352, 358-59 (1991). "[T]he critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike." Miller-El, 537 U.S. at 338-39.

The Court affords deference to trial court findings on the issue of discriminatory intent because "the finding 'largely will turn on evaluation of credibility.'" Miller-El, 537 U.S. at 339 (citing Batson, 476 U.S., at 98, 90 L. Ed. 2d 69, 106 S. Ct. 1712 n. 21.); Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001)("We regularly defer to the fact-findings of trial courts because those courts are uniquely positioned to observe the manner and presentation of evidence."); Hernandez, 500 U.S. at 365 ("Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because ... the finding largely will turn on evaluation of credibility"). A petitioner's challenge to a strike necessarily involves a question of fact, and the trial court has a unique opportunity to observe the demeanor of the venirepersons. The Court's review presumes that the Missouri courts "found the facts correctly, unless [petitioner] rebuts that presumption with clear and convincing evidence." Weaver, 241 F.3d at 1030 (citing 28 U.S.C. § 2254(e)(1)). The Court's "deference to trial court fact-finding is doubly great in the present circumstance because of the 'unique awareness of the totality of the circumstances surrounding voir dire,' ... and because of the statutory restraints on the scope of federal habeas review." Weaver, 241 F.3d at 1030 (internal citation omitted); Hernandez, 500 U.S. at 364 (citing Batson, supra, at 98, n.21)("[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal[.]"). The Supreme Court has noted that the evidence regarding such challenges is within the trial court's domain,

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

Hernandez, 500 U.S. at 365 (internal citations and quotations omitted).

Here, Strong fails to overcome the statutory presumption of correctness afforded the state court's fact-finding. The prosecutor provided race neutral reasons for striking Stevenson and Bobo, which were evaluated and accepted by the state court judge based upon his observations. For both Stevenson and Bobo, the prosecutor identified several reasons for striking each of them.

The prosecution identified reasonable, race-neutral reasons for striking Stevenson and Bobo. See also United States v. Thompson, 450 F.3d 840, 844 (8th Cir. 2006)(where the government provided a race neutral explanation for its peremptory challenge, the court need not consider whether the petitioner made out a sufficient prima facie case). "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." Hernandez, 500 U.S. at 360. The prosecutor struck Stevenson because she did not have any minor children, she had a brother in prison, she was annoyed by the sequestration, she was "weak on the death penalty," and she was religious. Likewise, the prosecutor struck Bobo because he had a cousin in prison and he was religious. None of these reasons are unlawful or provide evidence of an improper means for striking these venirepersons. Thompson, 450 F.3d at 844 (affirming that strike was not improper where venireperson, *inter alia*, did not have children); Bell-Bey v. Roper, 499 F.3d 752, 758 (8th Cir. 2007)(juror's demeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror; noting that the burden rested on the petitioner to rebut and develop a record demonstrating that the state attorney's proffered nondiscriminatory rationale for the peremptory strike, "body language," was pretextual); Miller-El v. Dretke, 545 U.S. 231, 270 (2005) (Breyer, J., concurring)(noting that some lower courts have extended Batson's rule to religious affiliation, but the Supreme Court has not)[10]; Luckett v. Kemna, 203 F.3d 1052, 1055 (8th Cir. 2000)(being weak

---

[10]See also Davis v. Minnesota, 511 U.S. 1115, 114 S. Ct. 2120, 128 L. Ed. 2d 679 (1994) (denial of certiorari in a case raising the issue of whether Batson applies to religious discrimination in jury selection); see also United States v. Girouard, 521 F.3d 110, 113 (1st Cir. 2008) ("We have

on the death penalty is a race neutral reason for striking a potential juror); <u>Shurn v. Delo</u>, 177 F.3d 662, 665 (8th Cir.) (same), cert. denied, 120 S. Ct. 510 (1999); <u>United States v. Wiggins</u>, 104 F.3d 174, 176 (8th Cir. 1997)("the incarceration of a close family member is a legitimate race-neutral reason justifying the use of a peremptory strike"); <u>United States v. Boyd</u>, 168 F.3d 1077, 1077-78 (8th Cir. 1999) (per curiam) (finding incarceration of a family member is a "valid race-neutral reason[] for the juror's dismissal").

"Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, 'the trial court then [has] the duty to determine if the defendant has established purposeful discrimination.'" <u>Hernandez</u>, 500 U.S. at 363 (quoting <u>Batson</u>, 476 U.S. at 98). Since the government presented specific race neutral reasons for its strike, the trial court did not commit clear error by denying Strong's <u>Batson</u> challenge. <u>Thompson</u>, 450 F.3d at 844. The trial court listened to and considered Strong's objections before overruling Strong's challenges. <u>United States v. Feemster</u>, 98 F.3d 1089, 1091 (8th Cir. 1996)(concluding the trial court had adequately completed the third step

---

never held that <u>Batson</u> applies to cases of religious discrimination in jury selection."). <u>But see</u> <u>United States v. Brown</u>, 352 F.3d 654, 668 (2d Cir. 2003)(holding that <u>Batson</u> applies to challenges based on religious affiliation under the Equal Protection Clause); <u>United States v. Stafford</u>, 136 F.3d 1109, 1114 (7th Cir. 1998) (stating in dicta that "[i]t would be improper and perhaps unconstitutional to strike a juror on the basis of his being a Catholic, a Jew, a Muslim, etc.", but holding that because "status of peremptory challenges based on religion is unsettled," that the strike based on religion was not plain error); <u>United States v. DeJesus</u>, 347 F.3d 500, 511 (3d Cir. 2003)(the District Court properly determined that a strike motivated by religious beliefs, as opposed to religious affiliation, was valid and proper). Even if it would be found that <u>Batson</u> applies to religious beliefs, that still would not affect the determination in this case. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989) ("[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced").

of a Batson challenge by weighing the persuasiveness of the proffered nondiscriminatory rationale and by making a finding the government had not exercised a peremptory strike in a discriminatory manner).

Moreover, Strong has not identified any similarly situated white jurors who were not struck. Strong attempts to attack the strikes of Stevenson and Bobo based upon anecdotal information with regards to one aspect of other venirepersons. Strong, however, cannot identify any white venirepersons who were not stricken that possessed all of the bases for which the prosecution struck Stevenson and Bobo. To that end, the Missouri Supreme Court noted that there were not similarly situated white jurors. State v. Strong, 142 S.W. 3d at 713-14. Strong claims that venirepersons Kimberly Keachie, Donald Moreland, and Priscilla Schmidt were similar to Strong because they did not have young children. (Resp. Ex. G, pp. 498, 499, 501). Keachie, however, was a young teacher who worked with children. (Resp. Ex. G, p. 501). Strong also claims that venirepersons Kelly Sullivan and Keachie were similar to Stevenson because they had relatives or acquaintances in prison. Sullivan and Keachie, however, were not similar because Keachie worked with children and Sullivan had two young children. (Resp. Ex. G, pp. 501, 503). The prosecutor also noted that Keachie was strong on the death penalty and Sullivan had no opposition to imposing the death penalty. (Resp. Ex. L, pp. 341, 915). Also, contrary to Strong's claim, the trial court noted Stevenson's "aggravation" and "physical disdain" regarding being sequestered. (Resp. Ex. L, pp. 912, 917). The trial court stated that Stevenson's "mannerisms were much stronger than other individual[s] on the jury panel, including all Caucasians and African Americans." (Resp. Ex. L, p. 918). The trial court also stated that from her "physical motions she did not appear to be extremely strong for the death penalty." (Resp. Ex., p. 912). Thus, the trial court provided "specific observations corroborating the

government's justification for exercising a peremptory challenge" that bolstered the prosecutor's rationale for striking those venirepersons. United States v. Ellison, 616 F.3d 829, 832 (8th Cir. 2010)

Likewise, the prosecutor provided race neutral reasons for striking Bobo. The prosecutor stated that he struck Bobo because he was a seminary dean, indicated a weakness toward the death penalty and had a family member incarcerated for murder. "Occupation is a permissible reason to defend against a Batson challenge, and being a social worker could be a legitimate basis to strike a prospective juror." Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003)(no Batson violation for striking a venireperson who, *inter alia*, was a retired social worker);[11] see also United States v. Maxwell, 473 F.3d 868, 872 (8th Cir. 2007) ("The inference that a juror's employment might make the juror more sympathetic to a criminal defendant is a valid, race-neutral reason for striking a juror.").

Strong claims that the reasons provided for striking Mr. Bobo are pretextual because the prosecutor did not strike venirepersons Sullivan or McCabe. Sullivan, however, was not a seminary dean; she was a market researcher. (Resp. Ex. G, p. 503). Sullivan also expressed no reservations regarding imposing the death penalty, and indicated that wasn't particularly close to her mother-in-law's cousin who was murdered. (Resp. Ex. L, pp. 341, 862-63). Similarly, McCabe was not a seminary dean, but instead was a retired parochial school teacher. The Court agrees with the Missouri Supreme Court that "teaching students at a private high school differs from training individuals for a religious vocation." State v. Strong, 142 S.W. 3d at 713. In addition, unlike Bobo, McCabe did not have a cousin in prison. Id. Thus, the Court finds that Strong cannot show that the

---

[11]Citing Evans v. Smith, 220 F.3d 306, 314-16 (4th Cir. 2000)(finding the petitioner failed to overcome the presumption of correctness of the strike where the prosecutor proffered a juror's occupation, inter alia, as a basis for striking the juror); United States v. Griffin, 194 F.3d 808, 825-26 (7th Cir. 1999) (noting a juror's occupation is a legitimate, race-neutral basis on which to strike a juror).

prosecutor's strikes were pretextual because none of the Caucasian venirepersons identified were similarly situated to Stevenson and Bobo.

In addition, Judge Gaertner noted that he believed the prosecutor Robert McCulloch was not motivated by racial animus. He stated "[f]urther, I am aware of Mr. McCulloch's credibility and based upon his reputation, demeanor, and the Court's experience with Mr. McCulloch, I find that Mr. McCulloch has not pretextually stricken Miss Stevenson." (Resp. Ex. L, p. 918); see also Resp. Ex. L, pp. 923-24 ("And as the Court previously indicated, the third factor with regard to the credibility of Mr. McCulloch and the Court's past experiences with him and his reputation, the Court will find that ... the reasons proffered are not merely pretextual in this case.").

The prosecutor offered race-neutral, non-pretextual reasons for his strikes, which Strong has not been able to rebut. The trial judge assessed the reasons provided for the strikes and found them to be credible. Further, the record does not show any of the Caucasian venire members had all of the challenged factors the stricken venire member possessed. Because he cannot denigrate the state trial court's factual determinations, the Court concludes that the state trial court's decision was objectively reasonable. 28 U.S.C. § 2254(d).

D.     Equal Protection Claim/Religion

In the last sentence of the second ground and in his Traverse, Strong asserts that "striking Mr. Bobo because of his religious affiliation violates equal protection[.]" (Petition, p. 27; Traverse, p. 7).

The government asserts that Strong's equal protection claim is barred on a procedural basis from review. (Response, p. 22); State v. Strong, 142 S.W. 3d at 713, 714; see also Traverse, p. 16 (acknowledging the procedural default). Strong notes that the Court can consider this claim if cause and prejudice exist that excuse Strong's procedural default. Coleman v. Thompson, 501 U.S. 722, 750 (1991)("In all cases in which a state prisoner has defaulted his federal claims in state court

pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); Storey v. Roper, 603 F.3d 507, 523 (8th Cir. Mo. 2010). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," i.e., which impeded counsel's ability to preserve the claim through the appellate process. Murray v. Carrier, 477 U.S. 478, 488 (1986). If no cause has been shown, then the Court need not consider the prejudice element. McCleskey v. Zant, 499 U.S. 467, 502 (1991) (citing Carrier, 477 U.S., at 494).

Ineffective assistance of counsel, which prevents a petitioner from raising a claim in state court, is cause for a procedural default. Carrier, 477 U.S. at 488. "In order for deficient trial work to constitute the kind of 'cause' that would excuse a procedural bar, counsel must have been constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)." Clemons v. Luebbers, 381 F.3d 744, 752 (8th Cir. 2004). "And, petitioner must have independently presented this ineffective assistance claim to the state court for adjudication." Id. at 752 (citing Carrier, 477 U.S. at 489). The exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Carrier, 477 U.S. at 489.

Because the Court finds that such a Batson claim would not have been well-taken, the Court finds that Strong's equal protection claim lacks merit.[12] As discussed herein, the prosecutor provided

---

[12]The Court also finds that the outcome of the state court proceeding would not have been different absent counsel's failure to make a religion-based Batson objection. Strickland, 466 U.S. at 691-92; Strong v. State, 263 S.W. 3d at 648-49; Clemons, 381 F.3d at 753.

multiple legitimate, nondiscriminatory reasons for striking both Stevenson and Bobo, including Stevenson's opposition to sequestration, Bobo's occupation and their relationships to prisoners and weak endorsement of the death penalty. Accordingly, the Court finds that the prosecutor still had a constitutionally sound basis to strike Stevenson and Bobo even assuming (without finding) that Strong's equal protection claim based on the venireperson's religion lacks merit. See Bell-Bey v. Roper, 499 F.3d at 758 ("Assuming for the purpose of argument that the state attorney's first reason gives rise to some inference of discrimination, this inferred discrimination is nevertheless insufficient because the state attorney also provided a nondiscriminatory reason for the use of the peremptory strike."). Accordingly, Strong's second point is denied.

## III.  Ineffective Assistance of Counsel: Failure to Object to the Exclusion of Jurors on Religious Grounds

### A.  Legal Standard for Ineffective Assistance of Counsel

To support an ineffective assistance of counsel claim, a convicted movant must show "that his counsel's performance was deficient, and that he suffered prejudice as a result." Paul v. U.S., 534 F.3d 832, 836 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687); U.S. v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005) (citations omitted). "Under the first element, there is a 'strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy.'" Toledo v. United States, 581 F.3d 678, 680 (8th Cir. 2009) (quoting Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir. 1996)). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," Kyles v. Whitley, 514 U.S. 419, 434 (1995), but more than a possibility. White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005). A reasonable probability "is a probability sufficient to undermine

confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact". <u>Id</u>. at 698.

"Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009) (citing <u>Strickland</u>, 466 U.S. at 689)). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" <u>Id</u>. (citing <u>Strickland</u>, 466 U.S. at 690)).

B.    Application

Strong asserts that his counsel was ineffective for failing to raise religion-based <u>Batson</u> objections to the premeptory strikes of venirepersons Stevenson and Bobo. (Petition, p. 29). Strong claims that "Counsel's failure to object was based on his unfamiliarity with the law prohibiting strikes based on the juror's religious beliefs." (<u>Id.</u>, p. 29). Strong claims that his counsel should have challenged the prosecutor's premeptory strikes based on  religion, as well as race.

With respect to Stevenson, the prosecutor struck her because she "mentioned church and religion." (Resp. Ex. L, p. 911).  The trial court also noted that Stevenson said that she was a "member of a church." (<u>Id.</u>, p. 912). Defense counsel pointed out several white jurors that he believed were similarly situated to Stevenson. (<u>Id.</u>, pp. 912-17).  Counsel never made a direct <u>Batson</u> challenge based upon religion, but only stated that the religious excuse for striking Stevenson was "merely pretextual." (<u>Id.</u>, p. 917).

With respect to Bobo, the prosecutor stated that "Mr. Bobo is the assistant dean of Covenant Seminary, and as much respect as I have for religious people, I don't want people, very religious, and I would have to assume because he's the dean of a seminary that he is a very religious person." (<u>Id.</u>, p. 919).  The prosecutor also stated that he also struck Bobo because he was not as strong as the

- 23 -

prosecutor would like a juror to be on the death penalty, in addition to Bobo's employment. (Id.). The trial court determined that Bobo's employment as the dean of Covenant Seminary and Bobo's second cousin's criminal history were "race neutral" reasons for striking Bobo. (Id., p. 920). In response, defense counsel pointed out that another venireperson, McCabe was a retired teacher at St. Louis Priory School. (Id., p. 921). Ultimately, the trial court held that there was a difference between being a teacher a religious-affiliated school, as McCabe was, and being a dean of a school that provided religious instruction, as Bobo was. (Id., p. 922-23).

The Missouri Supreme Court held the following on this issue:

> In reviewing Mr. Strong's claim for ineffective assistance of counsel, this Court need not decide whether the prosecution's peremptory strikes were constitutionally prohibited. Even assuming that trial counsel's failure to object to the peremptory strikes on religious grounds was unreasonable, Mr. Strong must show that counsel's shortcomings were prejudicial. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. To satisfy the prejudice prong of the Strickland analysis, Mr. Strong must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Worthington v. State, 166 S.W.3d 566, 573 (Mo. 2005)]. Demonstrating that the alleged error had some conceivable effect on the outcome of the trial is not sufficient. Johnson v. State, 189 S.W.3d 640, 645 (Mo. App. 2006). Rather, Mr. Strong must show that, absent the alleged error, there is a reasonable probability that he would have been found not guilty. U.S. v. Robinson, 301 F.3d 923, 925 (8th Cir. 2002). With respect to the sentencing phase, Mr. Strong needs to show a reasonable probability that the jury would have concluded that the death penalty was not warranted. Anderson, 196 S.W.3d at 33.

> Mr. Strong does not attempt to establish Strickland prejudice. Instead, he asserts that trial counsel's failure to raise religion-based Batson objections to the State's peremptory strikes is a structural error that is presumptively prejudicial. Structural defects are "constitutional deprivations . . . affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Id. (quotation omitted). One such structural defect is the trial by an adjudicator who is not impartial. Id. at 309. Therefore, "where a criminal defendant is deprived of the right to a fair and impartial jury, prejudice therefrom is presumed." [Everage v. State, 229 S.W.3d 99, 102 (Mo.

Ct. App. 2007)]. "Nonetheless, in order to avail himself of this presumption, [the defendant] must establish that the errors complained of resulted in his trial by a jury that was not fair and impartial." Id.

Mr. Strong relies on this Court's decisions in Knese v. State, 85 S.W.3d 628 (Mo. banc 2002), and Anderson v. State, 196 S.W.3d 28 (Mo. banc 2006), for his claim that counsel's failure to raise religion-based Batson challenges was a structural defect because it deprived him of the right to a fair and impartial jury. In Knese, defense counsel failed to review questionnaires and voir dire two jurors who indicated on the questionnaires that they would automatically vote to impose the death penalty if the defendant was convicted of murder. 85 S.W.3d at 632. This Court found that "[t]his complete failure in jury selection is a structural error." Id. at 633. As such, defense counsel's failure was presumptively prejudicial, and the judgment was reversed as to the penalty phase. Id.

In Anderson, defense counsel failed to strike a juror who indicated that he would vote for the death sentence unless defense counsel could convince him otherwise. 196 S.W.3d at 39. This Court found that "[f]ailure to strike a juror that is unfit to serve because of such an improper predisposition is structural error," and "[a] death sentence imposed by a jury tainted with structural error must be vacated." Id. at 40. As such, defense counsel's performance denied the defendant his right to a fair and impartial jury and constituted ineffective assistance of counsel as to the penalty phase. Id. at 42.

Both Knese and Anderson are distinguishable from the case at bar. In those cases, defendants showed by a preponderance of the evidence that counsel's errors resulted in the empanelling of biased jurors, depriving the defendants of their right to a fair and impartial jury. In this case, however, Mr. Strong has not made such a showing. At most, Mr. Strong can only demonstrate that qualified venirepersons were excluded from the jury.

In Young v. Bowersox, the United States Court of Appeals for the Eighth Circuit directly addressed the question at issue. 161 F.3d 1159 (8th Cir. 1998). On appeal from the denial of his petition for a writ of habeas corpus in federal district court, the defendant claimed that he received ineffective assistance because trial counsel failed to raise Batson challenges to the State's peremptory strikes of black venirepersons. Id. at 1160. Unable to show Strickland prejudice, the defendant asserted that counsel's failure to raise a Batson challenge was a structural defect rendering the entire trial unreliable so that prejudice must be presumed. Id. The Eighth Circuit rejected defendant's claim. It reasoned that, despite the defendant's contention that showing a reasonable probability of a different outcome was impossible, under Strickland, "error by counsel does not warrant setting aside the judgment of a criminal proceeding on collateral attack if the error had no effect on the judgment." Id. at 1161. Since the defendant did not show a reasonable probability that the results of the proceeding would have been different had the black venirepersons been empanelled on the jury, the Court found that his ineffective assistance claim must fail. Id. The

reasoning in Young is consistent with decisions of the Missouri court of appeals. See [Scott v. State, 183 S.W.3d 244, 248 (Mo. Ct. App. 2005)]("a movant is entitled to a presumption of prejudice resulting from counsel's ineffective assistance during the jury selection process only if the movant can show that a biased venireperson ultimately served on the jury"); State v. Colbert, 949 S.W.2d 932, 944 (Mo. App. 1997).

In accordance with these authorities, this Court holds that counsel's failure to raise a Batson objection, absent any attempt by Mr. Strong to demonstrate that unqualified persons served on the jury, does not amount to a structural defect that entitles him to a presumption of prejudice. This conclusion is consistent with this Court's finding of no plain error on direct appeal. Further, Mr. Strong makes no attempt to show that had counsel raised religion-based Batson objections, there is a reasonable probability that the outcome of the trial would have been different. Because Mr. Strong has failed to establish that trial counsel's alleged defects prejudiced him, the motion court did not error in denying his claim for ineffective assistance of counsel.

Strong v. State, 263 S.W.3d at 647-49.

As with many ineffective assistance of counsel claims, this Court finds that this claim can be disposed of on the ground of lack of sufficient prejudice. Young, 161 F.3d at 1160 (citing Strickland, 466 U.S. at 697). As previously stated, in order to prevail on a claim of ineffective assistance of counsel, Strong must show that his attorney's assistance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688. As in Young, Strong "cannot satisfy the prejudice requirement and has not attempted to do so." Young, 161 F.3d at 1160. "[A]n error by counsel does not warrant setting aside the judgment of a criminal proceeding on collateral attack if the error had no effect on the judgment. Young, 161 F.3d at 1161 (citing Wright v. Nix, 928 F.2d 270, 273 (8th Cir. 1991)).

Strong has failed to show the requisite prejudice because of striking venirepersons Stevenson and Bobo on religion grounds. Strong never claims that the result would have been different if his attorney had objected to the prosecutor's strikes on the basis of religion. Accordingly, Strong's claim

fails because this Court cannot find that Strong was prejudiced by his counsel's failure to object to striking Stevenson and Bobo on the grounds of their religion. See Young, 161 F.3d at 1161 (holding that the court assumes there was no prejudice, even with respect to ineffectiveness claims based on Batson). As held in Young, Strong's mere allegation that qualified venirepersons were excluded from jury service is insufficient to demonstrate prejudice. Id. Moreover, Strong could not demonstrate that Stevenson and Bobo were qualified venirepersons who were improperly excluded on the basis of religion under Batson because the prosecutor provided other, nondiscriminatory reasons for excluding both of them. See Bell-Bey v. Roper, 499 F.3d at 758. For these reasons, the Court finds that Strong has failed to meet the prejudice requirement of a Strickland ineffective assistance of counsel claim.

In addition, the Court also finds that Strong has not demonstrated that his counsel's performance fell below an objective standard of reasonableness. Strong claims that striking Stevenson and Bobo violated potential juror's rights to free exercise of religion and equal protection under the Fifth Amendment to the Constitution. (Petition, pp. 31-32). In addition, Strong alleges that the strikes violated his rights to due process, a fair trial, and freedom from cruel and unusual punishment under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, and violated Article 26 of the Universal Declaration of Human Rights. (Petition, p. 32).[13] Strong, however, does not cite to any law to support these claims. In fact, the United States Supreme Court has not extended Batson to religion. Miller-El v. Dretke, 547 U.S. at 270 (Breyer, J., concurring); Davis v. Minn., 511 U.S. 1115 (1994)(Thomas, J., dissenting from a denial of certification, where the court held that the prosecutor's premeptory strike based on religion was sufficiently race-neutral

---

[13]But see Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004) (The "Declaration does not of its own force impose obligations as a matter of international law.").

under <u>Batson</u>); <u>see also</u> Traverse, pp. 19-20 (noting that the Supreme Court has not extended <u>Batson</u> to religious-based strikes, but holding that "such a prohibition would be the next logical step"). Thus, the Court finds no basis for extending the application of <u>Batson</u> to strikes based on religion and Strong cannot demonstrate that his counsel's performance was unreasonable in failing to make an objection based on religion.[14] Strong's point three is denied.

## IV.     Denial of Strong's Right to Present a Defense

Strong asserts that the trial court improperly precluded him from accessing Eva's psychiatric records from the Epworth Child and Family Services Home ("Epworth"), which demonstrated that Eva suffered from a mental disorder. (Petition, p. 32). Strong asserts that these records, combined with the Metropolitan St. Louis Psychiatric Center records, would have presented a "believable theory" that Eva, not Strong, killed Zandrea. (Petition, p. 33; Traverse, p. 20).

Defense counsel obtained Eva's treatment records from St. Louis Metropolitan Psychiatric Center, where she was admitted on March 6, 1997. These records reflected that Eva was diagnosed with a borderline personality disorder, with mixed narcissistic features. Defense counsel also subpoenaed records from Epworth. Epworth's counsel moved to quash the subpoena. After conducting an *in camera* review, the trial court found the records from Epworth to be irrelevant and immaterial and had them sealed.

Strong asserts that the trial court denied his right to present a defense under the Fifth, Eighth, Sixth and Fourteenth Amendments to the United States Constitution. He asserts that if the trial court had not sealed the records, then Strong would have presented evidence that Eva killed Zandrea.

---

[14]Moreover, as noted earlier, an extension of Batson would be prohibited under the rationale of <u>Teague</u>, 489 U.S. 288.

(Petition, p. 33). Strong claims this theory is supported by the evidence that Strong loved Zandrea. (Id.).

The Missouri Supreme Court held that Strong did not preserve this claim for review, or that the trial court did not abuse its discretion in sealing Eva's psychiatric records:

> Strong claims the trial court abused its discretion by sealing Eva's subpoenaed psychiatric records because these records may have disclosed an evidentiary basis for presenting a defense that Eva attacked Strong or Zandrea thereby causing Strong to attack her. He argues that sealing the records denied his rights to due process, to confrontation, and to present a defense.
>
> Strong filed on January 8, 2002, a motion to compel disclosure of Eva's medical and psychiatric records containing a request for a pretrial hearing on the motion. The trial court filed an order on July 26, 2002, granting Strong's motion to compel disclosure of Eva's medical and psychiatric records. During the pretrial hearing on February 14, 2003, Strong requested an in camera review of the documents and indicated that he would decide after that review whether to depose an employee of one of the facilities from which the records were sought. At the pretrial hearing, the trial court ruled it would perform the in camera review as soon as the documents became available.
>
> The court filed two orders on February 19, 2003. The first order noted the trial court had received the records, conducted the in camera inspection, and found that the documents were "irrelevant and immaterial to the case." The second order was to seal the records. Strong never objected to the sealing of these records, but he later argued in his motion for new trial that the trial court committed prejudicial error in overruling his motion to disclose Eva's medical and psychiatric records and in providing an in camera review of those records.
>
> Strong has failed to preserve this claim of error as to the sealing of the records for appellate review, and the plain error standard of review applies. Rule 30.20. Following the in camera inspection, Strong did not request to depose the witness, failed to object to the sealing of the record, and never raised the issue again until his motion for a new trial. Strong received all the relief that he requested, namely the grant of his motion to disclose, the pretrial hearing, and the in camera inspection. If he desired a different or additional remedy, he should have requested relief from the trial court. State v. Walker, 484 S.W.2d 284, 287 (Mo. 1972). As he did not, he cannot claim error on appeal. Id. Furthermore, this Court's review of the sealed records confirms that the trial court did not abuse its discretion in sealing them. Strong has failed to demonstrate manifest injustice necessary to establish plain error. See Rule 30.20.

State v. Strong, 142 S.W.3d at 714-15.

The Missouri Supreme Court's decision is premised on its interpretation of state law regarding the admissibility and relevance of certain records. "A state's interpretation of its own law is virtually unreviewable by a federal court." Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003)(citing Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996)); Byrd v. Armontrout, 880 F.2d 1, 9 (8th Cir. 1989)("The admissibility of evidence in a state proceeding is a matter of state law."). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)(citing Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995)); Bennett v. Lockhart, 39 F.3d 848, 856 (8th Cir. 1994), cert. denied, 115 S. Ct. 1363 (1995)). As discussed herein, those defects are not present here.

Under Missouri law, Strong cannot show that the trial court erred, or that any alleged error fatally infected his trial and deprived him of due process. In Missouri, "'[m]edical records are subject to the physician-patient testimonial privilege codified under § 491.060(5) RSMo 1994.'" Cincinnati Ins. Co. v. Morris, No. 4:05CV2323, 2006 U.S. Dist. LEXIS 74890, *2-3 (E.D. Mo. Oct. 13, 2006)(qutoting State ex rel. Stecher v. Dowd, 912 S.W.2d 462, 464 (Mo. Ct. App. 1995)); Ingram v. Mut. of Omaha Ins. Co., 170 F. Supp. 2d 907, 912 (W.D. Mo. 2001)(the physician-patient privilege, codified in Mo. Rev. Stat. § 491.060(5), relates to "a physician's disclosure of medical information by testimony in court or by formal discovery"). The physician-patient privilege is for the benefit of the patient and only may be waived by her. Vincent v. Connaught Lab., 131 F.R.D. 156, 157 (E.D. Mo. 1990)(citing State ex rel. McNutt v. Keet, 432 S.W.2d 597 (Mo. 1968)). Social workers and licensed counselors hold a similar obligation "not [to] disclose any information acquired from persons consulting them in their professional capacity[.]" Mo.Rev.Stat. 337.636 (2010); Bohrn v. Klick, 276 S.W.3d 863, 865 (Mo. Ct. App. 2009)("Section 337.636 recognizes a privilege for

communications between licensed clinical social workers and their clients."). The privilege is, however, subject to certain exceptions, such as when there is "a stronger countervailing societal interest." State ex rel. Dixon Oaks Health Ctr. v. Long, 929 S.W.2d 226, 230 (Mo. Ct. App. 1996).[15]

Here, Strong fails to demonstrate the existence of a stronger countervailing societal interest that would trump the privileged nature of Eva's records. Strong alleges, without support that "[p]erhaps ... [Strong] did not kill Zandrea" and Eva did instead. (Petition, p. 33). From the record, the Court does not believe that Strong made a showing about the materiality or the exculpatory nature of the Epworth records. Because Strong did not make such a a showing, "[t]his alone is fatal to any claim of error concerning his access to the victim's [Epworth] records." State v. Goodwin, 65 S.W.3d 17, 21 (Mo. Ct. App. 2001); State v. Seiter, 949 S.W.2d 218, 221 (Mo.App. E.D. 1997).

In addition, the trial court and the Missouri Supreme Court found that the exclusion of Eva's records from Epworth was proper because they were "irrelevant and immaterial to the case." Strong v. State, 142 S.W.3d at 715. Accordingly, the state court's evidentiary decision "ends our inquiry" because Strong has not shown that this evidentiary ruling infringed upon a specific constitutional protection or was so prejudicial that it amounted to a denial of due process. Byrd v. Armontrout, 880 F.2d at 9; Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.), cert. denied, 488 U.S. 928, 109 S. Ct. 315, 102 L. Ed. 2d 333 (1988).

The Court finds that the errors alleged by the trial court were not of such magnitude as to support a due process claim. Strong has come forward with no other evidence to support his "believable theory" that Eva killed Zandrea. Furthermore, in light of the abundant evidence that

---

[15]The trial court's ruling was also in accordance with controlling Supreme Court precedence. Mont. v. Egelhoff, 518 U.S. 37, 42 (1996)(quoting Taylor v. Illinois, 484 U.S. 400, 410, 98 L. Ed. 2d 798, 108 S. Ct. 646 (1988)("'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'").

Strong committed both killings, e.g., the similar methods and styles of killing, the fact that the jury did not hear alleged evidence that Eva may have suffered from mental disorders was not sufficiently prejudicial to the outcome of Strong's trial. The state court's determination that the Epworth records were not admissible was not unreasonable in light of the evidence.[16] Point four is denied.

## V. Improper Admission of Multiple Scene and Autopsy Photos Deprived Strong of a Fundamentally Fair Trial

Strong claims that he was deprived of his due process right to a fair trial because the prosecutor, over objection, displayed photographs of the crime scene and the autopsies of the victims. (Petition, p. 33; Traverse, p. 23).[17] Strong complains that the State placed the images of the victims' bodies before the jury through six witnesses and left them displayed throughout their testimony. (Petition, p. 34). Strong asserts that use of the photographs was more prejudicial than probative because the homicides were uncontested. (Petition, p. 34; Traverse, p. 24). Strong further claims that the State's actions were prejudicial because they caused the jury to reach a verdict grounded in sympathy instead of rational evaluation of the facts.(Petition, p. 34).

The Missouri Supreme Court found that the trial court did not abuse its discretion when it allowed the prosecutor to display the photographs of Eva and Zandrea:

> The trial court has broad discretion in the admission of photographs. State v. Ervin, 979 S.W.2d 149, 161 (Mo. banc 1998). Its decision will not be overturned absent an abuse of discretion. State v. Mayes, 63 S.W.3d 615, 631 (Mo. banc 2001).

---

[16]In his Traverse, Strong suggests that the Court grant him access under Rule 6(a) to the Epworth records to review the records to determine if they would be helpful to his case. (Traverse, pp. 22-23). Such relief, however, is not warranted to allow Strong to engage in a fishing expedition on an entirely unsupported theory and this Court's deferential standard of review of state court evidentiary rulings. See Traverse, p. 22 (noting his premise is "only a theory not supported by solid evidence").

[17]Strong objected to the admission of photographs labeled as exhibits 4-17, 19-34, 42-45, 47-48, 52-54 and to the videotape, labeled as exhibit 35. (Response, p. 38, n. 11; Traverse, p. 24).

> Photographs are relevant if they show the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony.

> State v. Rousan, 961 S.W.2d 831, 844 (Mo. banc 1998). "It is generally accepted that if photographs are gruesome, it is simply because the crime itself was gruesome." Ervin, 979 S.W.2d at 161. "A photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph." Rousan, 961 S.W.2d at 844.

> Each of the photos was independently relevant and assisted the jurors in some respect to show the scene of the crime, the victims' identities, the nature and extent of the wounds, the condition and location of the bodies, or Strong's mental state at the time of the murders. The videotape contained the same content as the photographs but aided the jurors by providing a unified view of the environment in which the murders occurred.

State v. Strong, 142 S.W.3d 702, 715-16 (Mo. 2004).

As previously stated, the admissibility of evidence in a state proceeding is a matter of state law, and a state's interpretation of its own law is virtually unreviewable by a federal court.  Byrd v. Armontrout, 880 F.2d at 9; Taylor v. Bowersox, 329 F.3d at 968 (citing Toney v. Gammon, 79 F.3d at 699); Parker v. Bowersox, 94 F.3d at 460 (citing Troupe, 72 F.3d at 76); Bennett, 39 F.3d at 856; see also Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (quoting Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.), cert. denied, 469 U.S. 919, 105 S. Ct. 298, 83 L. Ed. 2d 233 (1984))(federal courts "review admissibility rulings in a federal habeas corpus action 'only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process'").

The Court finds that Strong has not demonstrated that the admission of the photographs and videotape were so prejudicial that they amounted to a denial of due process or any other constitutional deprivation.  Here, the Missouri Supreme Court found that "[e]ach of the photos was independently relevant and assisted the jurors in some respect to show the scene of the crime, the

victims' identities, the nature and extent of the wounds, the condition and location of the bodies, or Strong's mental state at the time of the murders." State v. Strong, 142 S.W.3d 702, 715-16 (Mo. 2004). Moreover, the fact that the murders themselves were uncontested does not affect the relevance of the photographs. Old Chief v. United States, 519 U.S. 172, 186, 117 S. Ct. 644, 653, 136 L. Ed. 2d 574 (1997) ("a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it"). These reasons are not contrary to, nor an unreasonable application of, clearly established Eight Circuit precedent. Similarly, in Kuntzelman, the Eighth Circuit agreed with the Nebraska Supreme Court that the "particularly gruesome" photographs were "at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent" of the petitioner. 774 F.2d at 292; see also Rousan v. Roper, 436 F.3d 951, 959 (8th Cir. 2006) (on capital habeas review, the Eighth Circuit found that the district court did not err in denying habeas relief where the Missouri Supreme Court found that the photographs "'tended to corroborate the testimony of ... one of the state's key witnesses,' 'assisted the jury in understanding the testimony of the pathologist' and 'assisted the state's proof of deliberation' by showing that [the victim] was bound and shot at close range"). The Court cannot state that the admission of these photographs caused the jurors to act on the basis of passion, rather than reason. Rousan, 436 F.3d at 959. The state court did not act contrary to or unreasonably apply clearly established federal law.

Moreover, even if the admission of the photographs had been erroneous, it did not fatally infect the proceedings because the jury's finding clearly rests on a substantial factual basis, even absent the photographic evidence in controversy here. Rousan, 436 F.3d at 959; Kuntzelman, 774 F.2d at 292.

**VI.    Prosecutor's Statements Deprived Strong of a Fundamentally Fair Trial**

Strong claims that the prosecuting attorney made improper statements and arguments throughout the case. (Petition, pp. 34-38; Traverse, p. 25-20). Strong cites to several statements made by the prosecutor that improperly infected the trial. Strong claims that the prosecutor argued facts outside the record, misstated the facts and the law, personalized the case, and argued improper victim impact evidence.

"The relevant question is whether the [prosecutor's] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." United States v. King, 36 F.3d 728, 733 (8th Cir. 1994)(citing United States v. Bussey, 942 F.2d 1241, 1253 (8th Cir. 1991), cert. denied, 118 L. Ed. 2d 542, 112 S. Ct. 1936 (1992)). Where the court deems the prosecutor's comments improper, the Court considers "the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." United States v. Milk, 447 F.3d 593, 602 (8th Cir. 2006) (citing United States v. Beckman, 222 F.3d 512, 526 (8th Cir. 2000)). "Generally speaking, reversal is only warranted where the verdict could reasonably have been affected by the alleged misconduct." United States v. DeGarmo, 450 F.3d 360, 365 (8th Cir. 2006)(citing United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993)). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 642).

Under this standard of review and as discussed herein, this Court agrees with the reasoning of the Missouri Supreme Court that the prosecutor's statements did not deprive petitioner of a fair

trial.  The Missouri Supreme Court's rejection of Strong's claim was reasonable and entitled to deference under 28 U.S.C. §2254(d).

A.    Voir Dire

During voir dire, the prosecutor said, "... in most cases, we don't seek death, we don't ask for a death sentence in most first degree cases."  (Resp. Ex. L, p. 60).  In keeping with this theme, the prosecutor later stated, "What we're trying to determine is to pick a jury that's going to be unbiased, fair, impartial to everybody in the situation.  But there are sometimes certain facts that may be so overwhelming and overbearing that they impact a person's ability to be fair and impartial.  We only do that in very rare instances..."  (Resp. Ex. L, p. 110; Petition, pp. 34-35; Response, p. 41).  Following both statements, the prosecutor rephrased the statements.  The trial court overruled Strong's request to have the entire venirepanel discharged after the second statement, but the court instructed the jury to disregard the prosecutor's former statement.  (Response, p. 41; Resp. Ex. L, pp. 111-12).

Strong argues that these statements were improper because they argued facts outside the record and because they encouraged the jury to believe that death was the appropriate punishment in this case based upon the prosecutor's comparison with other cases.  (Petition, p. 35).  The Missouri Supreme Court disagreed.  State v. Strong, 142 S.W. 3d at 722-23.  The prosecutor merely explained the "procedure" and "process" for determining whether to seek the death penalty.  (Resp. Ex. L, p. 60).  The prosecutor's first statements were in response to the defense counsel's insinuation that the prosecutor was not following the law in seeking death.  State v. Strong, 142 S.W. 3d at 722-23; Resp. Ex. L., p. 55; Response, pp. 43-44.  Contrary to Strong's claim, the prosecutor was not trying to argue facts not in evidence, but instead the prosecutor intended to correct the impression created by defense counsel that the prosecutor had unfettered discretion in seeking the death penalty.

(Response, p. 44).  See United States v. Franklin, 250 F.3d 653, 661 (8th Cir. 2001)(quoting United States v. Young, 470 U.S. 1, 12-13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985))(when attacked, a prosecuting attorney may "respond substantially in order to 'right the scale.'") .

The second statement regarding not discussing evidence during voir dire, occurred when the prosecutor was determining if any member of the venirepanel had a bias opposed to the death penalty. (Resp. Ex. L, p. 110).  The defense counsel argued that the prosecutor was trying to argue to the jury that this is a rare case in which the State is seeking the death penalty based upon evidence and facts of the case, particularly that it involved the death of a child.  (Resp. Ex. L, pp. 111-12).  The prosecutor, however, made clear that he was attempting to elicit a "commitment" from the jury to wait until they have heard all the evidence before they decide whether to impose the death penalty. (Resp. Ex. L, p. 113).  The venirepanel was ordered to disregard the prosecutor's comment.  (Resp. Ex. L, pp. 113-14).  The Court assumes the jury followed the trial judge's instructions.  United States v. Barrera, 628 F.3d 1004, 1010 (8th Cir. 2011)(jurors are presumed to follow the court's instructions); United States v. Smith, 508 F.3d 861, 866 (8th Cir. 2007); see also United States v. DeGarmo, 450 F.3d 360, 366 (8th Cir. 2006) (prosecutor's comments were not prejudicial where the court gave all the curative instructions requested by the defense).  The trial court's instruction buttresses the Court's conclusion and agreement with the Missouri Supreme Court's finding that this single comment was not unduly prejudicial to Strong.

B.      Guilt Phase/Closing Argument

Strong challenges four of the prosecutor's statements made during the guilt phase of the trial. (Petition, pp. 35-36).  Defense counsel, however, only objected to two of the statements, which the Court addresses first.

First, Strong claims that the prosecutor personalized the case when he stated, over objection, "And you know what? I will not make a single apology for putting those pictures up there. I won't do that. I won't do that because he did it." (Resp. Ex. M, p. 1479; Petition, p. 35). Strong claims that these statements were improper because they express the prosecutor's personal belief or opinion. (Resp. Ex. M, p. 1480; Petition, p. 35). The prosecutor, however, made that statement in response to the defense counsel's argument that the prosecutor displayed pictures of the deceased "to engender sympathy and to shock the jury into ignoring the real evidence and find the defendant guilty." (Resp. Ex. M, p. 1480). The Missouri Supreme Court held that the prosecutor's statement was permissible, stating that "[p]rosecutors may make statements that indicate their opinion of the defendant's guilt, where it is apparent that the opinion is based on evidence in the case." State v. Strong, 142 S.W. 3d at 724 (quoting State v. Clemons, 946 S.W. 2d 206, 229 (Mo. banc 1997)). The Court does not find that the prosecutor's statement was unfairly prejudicial because it was made in response to statements made by the defense attorney and was made as part of his closing argument regarding Strong's guilt. See also United States v. Robinson, 110 F.3d 1320, 1327 (8th Cir. 1997)("So long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury."). Moreover, even if the prosecutor's comment was improper, Strong was not prejudiced by his remarks. See Preston v. Delo, 100 F.3d 596, 602 (8th Cir. 1996)(referring to the defendant as garbage that should be thrown away did not make the phase fundamentally unfair or its result unreliable). In addition, the jury was instructed not to treat the attorneys' arguments as evidence. (Resp. Ex. G, p. 526). The Court assumes that the jury followed this instruction. Barrera, 628 F.3d at 1010. The Court finds that the state court's determination was reasonable in light of the facts.

Strong also claims that the prosecutor also argued facts outside the record. He stated, "And the medical examiner says, yes, she could have fallen on the knife and cut her own head off. I wish this was, and it isn't, it's not an episode of CSI. It if it was and I wish it was, I wish it was because then --." (Resp. Ex. M, p. 1482). Defense counsel objected to the prosecutor's comment, but was overruled. (Id., pp. 1482-83). The prosecutor continued, "I wish it was an episode of CSI, because if it was, every little bitty thing would fall right into place in one hour. Instead of several days, we would have had all of that wrapped up and it would have pointed to Richard Strong, as it does, and we would all walk away from this thing." (Id., p. 1483). Strong claims that the prosecutor improperly referred to the CSI television program, which encouraged jurors to consider the facts and results from those hypothetical cases. (Petition, p. 36).

The Missouri Supreme Court stated that, "[b]y referencing this hour-long television crime drama, the prosecutor was merely referring to the jurors' common knowledge that, unlike in the real world, investigations on television typically wrap up in less than an hour." State v. Strong, 142 S.W.3d at 725 (holding that the trial court did not abuse its discretion in allowing those remarks). Strong has not identified how the prosecutor's statements were prejudicial or improper. Instead, the Court believes that the prosecutor was attempting to distinguish the trial from a commonly watched television program. See also United States v. Fields, 483 F.3d 313, 355 n.39 (5th Cir. 2007) (observing that "CSI effect" that describes a supposed influence that CSI shows have on jurors to demand scientific evidence, but noting such effect was "plausible" even though not "proven empirically"). The Court finds that a plea to the jury's common knowledge is permissible. See United States v. Swinton, 75 F.3d 374, 381 (8th Cir. 1996)("jurors are expected to bring commonly known facts to bear in assessing the facts presented for their consideration").

In addition, the State notes that defense counsel did not0 object to two guilt-phase statements that Strong claims were improper and prejudicial. "'If an arguably improper statement made during closing argument is not objected to by defense counsel, this court will only reverse under exceptional circumstances.'" Robinson, 110 F.3d at 1326 (quoting United States v. Nabors, 761 F.2d 465, 470 (8th Cir.), cert. denied, 474 U.S. 851, 88 L. Ed. 2d 123, 106 S. Ct. 148 (1985)). The absence of a timely objection is significant because the "[d]efense counsel heard the alleged misconduct and was in a far better position to judge its significance to the trial than an appellate court reading a cold transcript." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Likewise, the trial court could have intervened *sua sponte* to caution or criticize any objectionable statements. Id. Accordingly, Strong "is entitled to relief only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Robinson, 110 F.3d at 1326; see also James v. Bowersox, 187 F.3d at 869 ("Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial."). The combination of "the strict due process standard of constitutional review, the deferential review mandated by [the Antiterrorism and Effective Death Penalty Act] AEDPA, and our less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial" calls for an exceptionally limited review by the Court. Id.

First, Strong asserts that the prosecutor misstated the law when he said, "... and that he did so with deliberation. The deliberation is not cool, it's not something that has been reflected on, it is cooly reflected for any length of time, no matter how brief." (Resp. Ex. M, pp. 1474-75; Petition, p. 35). Strong claims that this statement encouraged the jury to ignore the essential element of first degree murder, deliberation. (Petition, p. 35).

The prosecutor followed his statement that "[t]he deliberation is not cool, it's not something that has been reflected on, it is cooly reflected for any length of time, no matter how brief," with the direction that "[t]he entire instruction is important and that entire instruction is key." (Resp. Ex. M, pp. 1474-75). The Missouri Supreme Court determined that "[n]o manifest injustice resulted to Strong from this statement." State v. Strong, 142 S.W.3d at 717. The Court agrees and finds that the prosecutor's statement that "deliberation" is "cooly reflected for any length of time, no matter how brief" was not a misstatement of the law. See Mo.Rev.Stat. §565.002(3)("Deliberation" is defined as "cool reflection for any length of time no matter how brief."); State v. Johnston, 957 S.W.2d 734, 747 (Mo. banc 1997)("Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began."). Accordingly, Strong was not prejudiced by this statement.

Also, Strong also asserts that the prosecutor argued evidence that was not before the jury. Strong claims that the prosecutor improperly stated that he did not display "four hundred of these pictures up there, or however many we have," of the injuries suffered by Eva and Zandrea, but that instead he "kept [it] to a minimum" and only showed forty images. (Resp. Ex. M, p. 1481; Petition, pp. 35-36).

The prosecution made these statements in response to Strong's closing argument wherein he claimed that the State displayed photographs to the jurors "[t]o elicit [their] prejudice and [their] passions rather than concentrating on the evidence." (Resp. Ex. M, p. 1465 ("[w]hat you were shown, what was concentrated on, showing your pictures, showing you the autopsy photographs, showing those things in hopes that it would affect you so deeply and so greatly that you would ignore other things")). The Court agrees with the Missouri Supreme Court's determination that the prosecutor's statement was reasonable under 28 U.S.C. §2254(d) as proper rebuttal argument. See

State v. Strong, 142 S.W. 3d at 725. The prosecution's argument was narrowly tailored to refute Strong's claim that the photographic evidence was displayed solely to play on the jurors' emotions. See United States v. Harris, 557 F.3d 938, 942 (8th Cir. 2009) (defined rebuttal evidence as that which is "offered to explain, repel, counteract, or disprove evidence of the adverse party"); United States v. Flynn, 196 F.3d 927, 930 (8th Cir. 1999)("In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case."). The Court finds that the state court properly held that the prosecutor's statement regarding having hundreds of photographs was not unduly prejudicial and Strong's point is denied on this claim.

C.     Penalty Phase

Strong objects to several claims made by the prosecutor during the penalty phase of the trial. Strong's attorney, however, did not object to any of these statements.

First, Strong claims that the prosecutor improperly relied on his position as a prosecutor, or "someone supposed to fight for justice," to encourage the jury to vote for death. (Petition, p. 36). The prosecutor stated, "I'll have an opportunity to argue why I think death is the appropriate punishment in this case, why I think you should sentence Richard Strong to death based upon the evidence and the information in this case. Why I think that should be the sentence imposed upon him for murder in the first degree of both Eva Washington and Zandrea Thomas." (Resp. Ex. M, p. 1723). The Missouri Supreme Court rejected this claim because the prosecutor "'merely expressed his opinion as to whether the death penalty should be imposed. A prosecutor may state his personal opinion on whether the death penalty should be imposed so long as that argument is fairly based on the evidence.'" State v. Strong, 142 S.W.3d at 726 (quoting State v. Johns, 34 S.W.3d 93, 117 (Mo. banc 2000)). This Court finds that the Missouri Supreme Court's determination that the prosecutor's statements were based on evidence was reasonable. See United States v. Moore, 129 F.3d 989, 993

(8th Cir. 1997)(statements that "I believe in what I do," and "my responsibility . . . is to show you [defendant's] guilt" were "innocuous, isolated statements that can in no way be construed as improper"); United States v. Segal, 649 F.2d 599, 604 (8th Cir. 1981)(government attorney's comment can be fairly read as an expression of personal belief in the guilt of the accused based on the evidence adduced at trial which did not lead the jury to believe that the opinion was based on evidence not included in the record). The Court finds that the prosecutor's comments in no way deprived Strong of a fair sentencing.

Next, Strong claims that the prosecutor also misstated the definition of reasonable doubt during his closing argument. Strong argues that the prosecutor improperly lowered the state's burden of proof when he argued, "If I have proven that beyond a reasonable doubt to your satisfaction as a jury..." (Resp. Ex. M, p. 1726) and "If, in your opinion, your view, your conscience what's true and just in this case at that point is the imposition of a death sentence on Richard Strong, then you consider evidence in mitigation and determine if that mitigation outweighs that evidence in aggravation." (Id., p. 1728; Petition, p. 36). The Missouri Supreme Court held that "The prosecutor's statement was not intended to define 'reasonable doubt,' instead it instructs the jurors that if he proved to them a statutory aggravator beyond a reasonable doubt, then that aggravator existed for purposes of the penalty phase. See sec. 565.030.4." State v. Strong, 142 S.W.3d at 726. Moreover, the Missouri Supreme Court noted that, even if the prosecutor's statement incorrectly "defined 'reasonable doubt,' which it did not, 'the prejudicial effect of the comment must be viewed in context and in light of the proper definition given in the instructions.'" Id. (quoting State v. Edwards, 116 S.W.3d 511, 537 (Mo. banc 2003)). The Court finds that the prosecutor was not attempting to confuse the jury regarding the definition of reasonable doubt. Rather, the prosecutors simply instructed the jurors that they had to determine whether a statutory aggravator was present

beyond a reasonable doubt. The jury was properly instructed on reasonable doubt and the Court assumes the jury followed those instructions.

In addition, Strong argues that the prosecutor "encouraged the jury to ignore its constitutional obligation unanimously and beyond a reasonable doubt to find the facts upon which the penalty rested." (Petition, p. 37). Strong claims that the prosecutor did this when he argued, "And remember what I said earlier, the instructions are as important for what they don't say as what they do say. At that point it doesn't say must decide whether there are facts and circumstances in statutory aggravation. It says at that point in aggravation of punishment, taken as a whole, which warrants the imposition of death." (Resp. Ex. M, p. 1727; Petition, p. 37). The Missouri Supreme Court held that "[t]his language tracks section 565.032.1(2) and MAI-CR3d 313.41A, and it is not erroneous." State v. Strong, 142 S.W.3d at 726. In this instance, the prosecutor's statements could not have encouraged the jurors to ignore their constitutional duties to find the facts upon which the penalty rested beyond a reasonable doubt because a determination whether all aggravating facts and circumstances warrant death does not need to be found beyond a reasonable doubt. State v. Johnson, 207 S.W.3d 24, 47 (Mo. 2006)("This Court has repeatedly rejected the claim that section 565.030.4(3) requires the jury to make a finding beyond a reasonable doubt."); State v. Gill, 167 S.W.3d 184, 193 (Mo. banc 2005) ("Although section 565.030.4 expressly requires the jury to use the reasonable doubt standard for the determination of whether any statutory aggravators exist, the statute does not impose the same requirement on the determination of whether evidence in mitigation outweighs evidence in aggravation."). Thus, the Missouri Supreme Court's decision was reasonable and the Court's determination that the prosecutor did not misstate Missouri law is entitled to deference under 28 U.S.C. §2254(d).

Next, Strong argues that the prosecutor improperly expanded the scope of victim impact by arguing, "And they're not the only victims in this case. Consider all of the evidence, all of the evidence that you saw in this case, and you will see just how much this tragedy affects people. It affected everybody that came into this courtroom, and who knows how many people beyond what you saw in this case has done." (Resp. Ex. M, p. 1735; Petition, p. 37). In addition, he stated, "You can't describe the pain and suffering that so many other people have to experience because of the conduct of Richard Strong ... Michelle Brady, when she tried to read about her friend, she could hardly get the words out, after two and a half years could barely read about the life of her good friend." (Resp. Ex. M, p. 1754). Finally, the prosecutor mentioned, "You saw the effect and the impact that it had on his ex-wife, on Kim Strong. You saw the impact, and you know the impact and the pain and the suffering that it has caused to his mother, and that it has caused to his children, and that it has caused to his brothers, and that it has caused to his sisters and their children." (Id.). Strong argues that the prosecutor's encouragement to see everyone in the courtroom as victims was improper and far exceeds what the Constitution allows. (Petition, pp. 37-38). He asserts that victim impact evidence and related argument is "only admissible if the defendant foresees it, making it relevant to blameworthiness." (Petition, p. 38). Likewise, he claims that the prosecutor's statements convert "mitigation into aggravation" because Strong's family's suffering only could be alleviated by killing him. (Id.; Traverse, p. 30).

R.S. Mo. §565.030 provides that evidence in aggravation and mitigation of punishment may include, within the discretion of the court, evidence concerning the murder victim and the impact of the crime upon the family of the victim and others. In Payne v. Tenn., 501 U.S. 808 (1991), the United States Supreme Court held that the Eighth Amendment did not bar the admission of victim impact statements and prosecutorial argument on that subject at a capital sentencing hearing. Id. at

827; Storey v. Roper, 603 F.3d 507, 517 (8th Cir. 2010). "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Id. Victim impact evidence should not be treated any differently than other relevant evidence. Id. "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Id. at 825 (citing Darden v. Wainwright, 477 U.S. at 179-83); see also Storey v. Roper, 603 F.3d at 518 (noting that given the dearth of Supreme Court case law on the subject, "it is exceedingly difficult to find that a particular state court's decision is contrary to, or an unreasonable application of, the Court's clearly established victim impact jurisprudence"; holding that showing a picture of the victim's tombstone to the jury did not render the death penalty verdict fundamentally unfair).

On appeal in this case, the Missouri Supreme Court held that,

Neither section 565.030.4 nor Payne indicates that the prosecutor's discussion of the victim impact evidence exceeds the boundaries of relevant evidence or that it was so "unduly prejudicial" as to render the trial "fundamentally unfair." See sec. 565.030.4; Payne, 501 U.S. at 825. Furthermore, the prosecutor was reiterating Strong's argument "about his family, about his children, about his nieces, about his nephews, about his mother's grandchildren, a multitude of grandchildren" and how they would be affected regardless of which punishment Strong received. As the defense stated: "The consequences of what has occurred touch everyone who came into this courtroom and told you about [Strong]." No manifest injustice resulted from these statements by the prosecutor concerning victim impact evidence.

State v. Strong, 142 S.W.3d at 727. The Missouri Supreme Court's decision was a reasonable application of federal law and was not contrary to the holding of Payne. In the same way that defense counsel claimed the crime had impacted Strong's family (Resp. Ex. M, pp. 1743-44), the prosecutor's victim impact statement identified how Strong's crime affected his victims and the community at large. The Court does not believe that the prosecutor's statements rendered Strong's sentencing fundamentally unfair or were in violation of the due process clause of the Fourteenth Amendment.

The concerns expressed by Strong do not always render a trial fundamentally unfair. This is especially true in light of the jury's "common sense ability to put aside a particular type of overzealous advocacy with the help of the court's standard instruction that arguments of counsel are not evidence." Sublett v. Dormire, 217 F.3d 598, 601 (8th Cir. 2000).

Finally, Strong claims that the prosecutor misstated the law and the facts by arguing, "But should we allow Richard Strong to escape justice because we can't provide complete justice? ... he would escape justice, he would escape paying the price that he ought to be paying for what he did in this case, if he is sentenced to life without parole." (Petition, p. 38). Strong claims that this argument encouraged the jury to believe erroneously that life imprisonment was not punishment. (Id.).

> The Missouri Supreme Court rejected Strong's claim as follows,
>
> "It is proper for a prosecutor to seek and request the most severe death penalty." State v. Clayton, 995 S.W.2d 468, 480-81 (Mo. banc 1999). In State v. Ringo, it was held not error to permit the prosecutor to characterize the more lenient sentence-life in prison without the possibility of parole-as a "reward." 30 S.W.3d 811, 821 (Mo. banc 2000). In State v. Deck, it was also held not error to permit the prosecutor to argue that the death penalty was the "only sentence the jury could impose to show justice and mercy . . . to the people in the courtroom." 994 S.W.2d 527, 543-44 (Mo. banc 1999). The prosecutor's argument in this case was within the broad scope of permissible argument during the penalty phase of a first degree murder case. Ringo, 30 S.W.3d at 821. No manifest injustice resulted from this argument.

State v. Strong, 142 S.W.3d at 727-28. The Missouri Supreme Court correctly applied state law and Strong does not cite to any authority to demonstrate that the Court unreasonably applied established, federal law. See Kinder v. Bowersox, 272 F.3d 532, 551-52 (8th Cir. 2001)(denying habeas relief where the prosecutor, during the penalty phase, stated, "You want to cage him, and feed him for the rest of his life, or do you want to do what justice demands [and] vote for death?")[18]

---

[18]In addition, Strong exaggerates the facts when he claims that the prosecutor argued that sentencing Strong to life in prison without parole was "tantamount to letting Richard off scot free". (Petition, p. 38). The prosecutor, in fact, emphasized to the jury that life in prison was punishment,

In sum, whether viewed singly or in the collective, the Court cannot conclude that the comments to which Strong now objects warrant the grant of habeas relief. Smith, 508 F.3d at 866. "Many of the prosecutor's comments were simply proper argument, especially when placed in context." DeGarmo, 450 F.3d at 365. "The comments that arguably approached impropriety were isolated and their cumulative effect would have been minor." Id. at 366. Moreover, as discussed herein, the evidence against Strong was substantial. Id. The weight of the evidence against petitioner was heavy; the overwhelming eyewitness and circumstantial evidence supported a guilty verdict on both murders, and reduced the likelihood that the jury's decision was influenced by the prosecutor's argument. Accordingly, the Court finds no manifest injustice and denies this ground for relief.

## VII. Ineffective Assistance of Counsel: Presenting an Unrealistic Guilt Phase Defense Based on Reasonable Doubt

During trial, defense counsel argued against conviction on the ground that the state failed to prove Strong guilty beyond a reasonable doubt. Strong argues that pursuing such a defense was unrealistic, given the overwhelming evidence that he was involved in the deaths. (Petition, p. 38). Strong claims that his counsel instead should have presented evidence regarding Strong's state of mind so that he would have been convicted of a lesser crime and avoided a death sentence. (Traverse, p. 33 ("counsel's failure to present the only viable defense available cannot be justified as trial strategy")).

Strong made a similar argument at the state level, which was rejected:

> Mr. Strong asserts that counsel should have chosen a different trial strategy during the guilt phase and asserts that trial counsel was ineffective for choosing to pursue a defense that the State had not proven appellant guilty beyond a reasonable doubt. He also states that the evidence of his involvement with the murders was overwhelming and that the only real question during the guilt phase concerned whether he deliberated. Finally, Mr. Strong suggests that his trial counsel was

---

"So it isn't a question of whether he's ever going to get out of jail, he's not. He's going to die in prison." (Resp. Ex. M, p. 1733).

ineffective in not presenting the defense that Mr. Strong was guilty of second degree murder because he did not deliberate, a defense that Mr. Strong would have supported.

There is sufficient evidence to support the motion court's finding that the nature of the defense was a reasonable strategic decision of trial counsel. A defense of a lack of deliberation is premised on the mental state of Mr. Strong. Section 565.002, RSMo 2000 (defining deliberation as a cool reflection for any length of time no matter how brief). Trial counsel testified at the motion hearing that he believed there was overwhelming evidence to contradict a defense of lack of deliberation. The evidence that was inconsistent with a defense of a lack of deliberation related both to the nature of the murders and to Mr. Strong's behavior during and after the murders. For example, during the murders, the telephone line was cut and Ms. Washington's 911 call was terminated. The nature of the wounds on the victims showed a measured and controlled attack. The number of wounds to both victims is also evidence that the attack took significant time, which would have given Mr. Strong time to reflect on his actions while committing the murders. While Mr. Strong savagely murdered Zandrea, he did not kill his own child who was in the room at the time. At no time did he call for medical help for the victims. When the police came to the home, Mr. Strong maintained his composure under questioning, which shows the ability to control his actions. Mr. Strong lied to the police as to what was happening, he changed his clothes after the murder, and he falsely stated that he had cut his hand when asked about the blood on him.

In addition, trial counsel stated that his choice of defense was an attempt to avoid opening the door during the guilt phase to any information that Mr. Strong had previously assaulted and threatened to kill both victims and that this weighed on his strategic decisions as to which defenses to pursue.

More importantly, contrary to his statement that he would have supported a defense of lack of deliberation, Mr. Strong failed to cooperate with his counsel and provided his attorney with numerous different versions of events. Mr. Strong once told his attorney that everything Mr. Strong told counsel was a lie, but trial counsel was unsure to what version of events Mr. Strong was referring. Mr. Strong also contended at times that Ms. Washington murdered Zandrea, not he.

Due to the bad facts of the murders of Ms. Washington and Zandrea and Mr. Strong's failure to cooperate, trial counsel faced extremely difficult strategic decisions. As counsel could not rely upon Mr. Strong's position to be consistent, choosing not to pursue a defense premised upon Mr. Strong's state of mind was a reasonable trial decision.

Once again, there was sufficient evidence to support the motion court's finding that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. See [State v. Tokar, 918 S.W.2d 753, 766, 768 (Mo. 1996)]. Trial counsel articulated sound reasons for the strategic

choices made.  As such, this Court will not find that the motion court erred in denying Mr. Strong's claim that trial counsel was ineffective for his strategic choices.

Strong v. State, 263 S.W.3d at 649-650.

This Court finds that the Missouri Supreme Court reasonably applied federal law, Strickland v. Washington, in analyzing Strong's claim.   As previously noted, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  "[T]he burden of proof is on the petitioner to show that 'his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007)(quoting Kimmelman v. Morrison, 477 U.S. 365, 383 (1986)).  The Missouri Supreme Court correctly determined that Strong has not met this burden.

The Court finds that the trial court reasonably determined that Strong has not shown that it was unreasonable trial strategy to pursue a defense based on reasonable doubt instead of lack of deliberation.  Defense counsel's testimony demonstrates that counsel's decisionmaking in this case fell well within the bounds of reasonable trial strategy.  During Strong's Rule 29.15 hearing,[19] defense counsel, Bradley Dede, testified that he had tried approximately one hundred criminal cases, he had worked on fourteen to seventeen death penalty cases and been lead counsel in five or six capital cases, wherein none of his clients had been sentenced to death.  (Resp. Ex. EE/38, pp. 5, 30, 143).  In his post-conviction deposition, counsel described Strong as "very frustrating" and stated that he had "substantial difficulty" getting cooperation from Strong.  (Id., pp. 55-56, 144, 148-150, 154-55).  In

---

[19]Rule 29.15 provides that "[a] person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15."

fact, counsel claimed that Strong would provide conflicting accounts of the case or refuse to communicate with his counsel. (Id., pp. 148-50, 154-55). At various times during the representation, Strong told his counsel that he committed both, one or none of the murders. (Id., p. 85, 147-48). Strong even told his counsel that he "made up" everything. (Id., p. 148).

Counsel stated that he discussed a strategy for pursuing a second-degree murder conviction, but that Strong would not allow his counsel to admit culpability. (Id., pp. 85, 91-92, 168-69). Counsel tried to have Strong evaluated for a mental deficiency defense, but Strong refused to cooperate because he did not want to pursue that strategy. (Id., pp. 57, 61-67, 151-53).

Counsel stated that he carefully analyzed the case to determine whether to pursue a lack of deliberation defense, but ran into several issues. (Id., pp. 83-84, 162, 165). First, counsel was uncomfortable with a lack of deliberation defense because of Strong's conflicting accounts of the murders. (Id., p. 85). Counsel needed authorization from Strong to admit that he committed the murders prior to pursuing a second degree murder defense. Counsel felt this was difficult, given Strong's various inconsistent statements. (Id., pp. 85-86).

Second, counsel worried that, if he pursued a lack of deliberation defense, then several pieces of evidence, which were otherwise not admitted during the guilt phase, would have been introduced to show deliberation. (Resp. Ex. EE/38, p. 163). Specifically, evidence that Strong had threatened to kill both victims, had assaulted Eva and had told Eva that he had dug her a "shallow grave" for her body would have been admitted. (Id., pp. 163-64). In addition, defense counsel believed that the prosecution would have hammered Strong with other evidence to support a finding that he deliberated. For example, Strong lied to the police about what was going on when they arrived at the scene. (Id., pp. 165-66, 172-73). The prosecution also would have highlighted evidence regarding the number of wounds suffered by the victims and the fact that Strong killed Eva and Zandrea but did not kill his own child to support a finding that he deliberated during the killings. (Id.,

170-72). As a matter of strategy for the guilt phase, defense counsel stated that he prefers to rebut the state's evidence rather than present a defense for the state to attack. (Id., p. 168). "Taking into account the leeway given to counsel under the Strickland standard and that given to the state courts under 28 U.S.C. § 2254(d)," Marcrum, 509 F.3d at 501, the Court concludes that Strong has not overcome the strong presumption that counsel acted reasonably in deciding against pursuing a defense of lack of deliberation.

In addition, the Court also finds that Strong has failed to demonstrate that he was prejudiced by his counsel's decision not to pursue a defense of lack of deliberation. Based upon the overwhelming evidence presented to the jury, Strong could not demonstrate that the result of his trial would have been if his counsel had presented a different theory of the case. See Strickland, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). As discussed previously, there was strong evidence that Strong deliberated prior to and during the killings. See State v. Strong, 142 S.W.3d at 717 (evidence that supported deliberation included (1) Strong took a knife from the kitchen to the bedroom to kill Eva and Zandrea, (2) Eva attempted to call for help, but the call was disconnected, (3) Eva was stabbed 21 times and had 5 slash wounds, Zandrea was stabbed nine times and had 12 slash wounds, and (4) Strong lied to, ignored and ran from police rather than seeking medical help for Eva and Zandrea); see also Resp. Ex. EE/38, pp. 163-73 .

Finally, Strong claims that his counsel was ineffective because he failed to present evidence of Eva's disturbed mental state and bad acts from reports of Strong's family members and Eva's medical records. (Petition, pp. 39-42). According to Strong, if the jury had this information then "Strong's statements that [Eva] Washington had hurt her own daughter did not seem so far-fetched." (Petition, p. 42). Strong did not raise this argument in his post-conviction motion. See Exhibit Y, pp. 43-45, 73-87 Strong v. State, 263 S.W.3d at 649 (not addressing Eva's alleged bad acts in

Strong's claim of ineffective assistance of counsel for choice of defense). Therefore, this claim is procedurally defaulted. <u>Clemons</u>, 381 F.3d at 750; <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002). Even if this claim were not procedurally defaulted, the Court finds that evidence of Eva's bad acts or mental state would not have been sufficient to overcome the strong evidence that Strong deliberately murdered Eva and Zandrea.

The Court finds that the Missouri Supreme Court's reasonably applied <u>Strickland</u> to Strong's ineffective assistance of counsel claim. Strong's point is denied.

## VII.   Confrontation Clause Violation

Strong claims that the trial court improperly allowed a police officer to testify regarding Eva's out-of-court statements that Strong had assaulted her in November of 1999. (Petition, pp. 43-44). Strong claims that these statements were inadmissible because they were testimonial and he was not afforded an opportunity to cross-examine Eva.

On plain error review, the Missouri Supreme Court held that the trial court properly admitted police officer Dan Patrick's testimony regarding Eva's statements.

> The police officer testified that he responded to a domestic call at Eva's apartment on November 10, 1999, at approximately 11:30 p.m. He arrived within one minute of the 911 call and saw Strong and another man outside the apartment getting into separate cars. The officer testified that when he arrived, Eva "was crying, visibly upset, borderline hysterical." He said she had a knot on her forehead and her left eye was bruised. He testified that Eva said, "'He hit me, he hit me in the eye, and he hit me in the mouth, and he choked me until I passed out.'" The officer testified that while Eva was saying those things, he noticed a large wet spot in the crotch of her pants. Eva told the officer that Strong was the one who had hit her.

> The state contends the testimony was admissible because it was within the excited utterance exception of the hearsay rule. See <u>State v. Van Orman</u>, 642 S.W.2d 636, 638 (Mo. 1982) (also referred to as "spontaneous exclamation" or "spontaneous statement" exception). At trial, Strong's counsel essentially conceded this assertion when he asked to approach the bench and said, "It was my understanding from in chambers that we were only going into a few of the statements which were made as excited utterances."

"The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy." Id. at 639. This exception is premised on the idea that "where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant." Id.

The officer testified that he arrived on the scene within one minute of the 911 call. Strong, who had committed the assault, was just outside the apartment on the parking lot at that time. The officer described Eva as "hysterical" upon his arrival. Her demeanor and the surrounding circumstances demonstrated her remarks were "made under the immediate and uncontrolled domination of the senses as a result of the shock produced" by her assault. Id. As such, her statements to the officer as to what had occurred were "made under such circumstances as to indicate [they were] trustworthy." Id.

Strong further argues that his case should be controlled by State v. Bell, 950 S.W.2d 482 (Mo. banc 1997). Bell, however, did not deal with the excited utterance exception and is inapplicable. Id. at 483-84. Strong has failed to demonstrate error, plain or otherwise, in the admission of this testimony.

State v. Strong, 142 S.W.3d at 718.

The Court finds that the Missouri Supreme Court's decision was not unreasonable in light of the evidence and did not unreasonably apply federal precedent. Generally, applying the Sixth Amendment, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59 (2004). The Court noted, however, that "not all hearsay implicates the Sixth Amendment's core concerns." Id. at 51. The Court specifically noted that the confrontation clause applies to "witnesses" who "bear testimony" against the accused. Id. (citing 2 N. Webster, An American Dictionary of the English Language (1828)). In turn, the Court noted that "testimony" is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. The Court also stated that, under most circumstances, "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Id. at 52.

The Missouri Supreme Court held that Eva's statement to Officer Patrick was not testimonial and did not implicate the Sixth Amendment because it was an excited utterance. Under Fed. R. Evid. 803(2), excited utterances, statements relating to a startling event and made while under the stress of excitement caused by the event, are not excluded by the hearsay rule. "'For the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation.'" United States v. Clemmons, 461 F.3d 1057, 1061 (8th Cir. 2006) (quoting Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999)). In determining whether a declarant was still under the stress of excitement when he made the statement, the Court considers "'the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.'" Id.

Here, the facts supported a finding that Eva's statement was an excited utterance. Contrary to Strong's claim, the interaction between Officer Patrick and Eva was not "structured". (Traverse, p. 39). Officer Patrick arrived within one minute of receiving Eva's call. Strong was still at the scene. Eva was "was crying, visibly upset, [and] borderline hysterical." Eva identified Strong as her attacker and was so distraught that she urinated on herself. Eva's statements regarding Strong appear to have been made while she was still under the stress of excitement and do not appear to have been made in response to any structured police interrogation. The circumstances and nature of the conversation support a finding that her statements were not deliberate or testimonial and, therefore, not barred by the Sixth Amendment. See also United States v. Brun, 416 F.3d 703, 707 (8th Cir. 2005)(holding that a 911 call was sufficiently reliable and admissible as an excited utterance). Therefore, the Court finds that the Missouri Supreme Court reasonably applied federal law and Strong's claim is denied.

**IX. Ineffective Assistance of Counsel: Failure to Object to the Admission of Eva Washington's Out-of-Court Statements**

Similarly, Strong claims that his counsel was ineffective during the penalty phase for failing to object to a police officer's statements regarding Eva's domestic abuse claims in November 1999. (Petition, pp. 44-46). Trial counsel objected to the admission of Eva's *ex parte* order against Strong, but not to Eva's statements. (Id.) Strong claims that those statements are inadmissible under Crawford v. Washington. Strong claims he was prejudiced by these statements because the prosecutor referred to the November 1999 assault several times in his opening and in his closing argument during the penalty phase. (Petition, pp. 44-46; Resp. Ex. M, pp. 1531-32, 1727-28, 1737).

The Missouri Supreme Court reasonably applied Strickland to Strong's claim. First, as noted by the Missouri Supreme Court, defense counsel could not have made a Crawford objection because Crawford was decided after Strong's trial and conviction. Strong v. State, 263 S.W.3d at 650.[20] Counsel cannot be found ineffective for failure to predict changes to the law. See Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987)("the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time"); Toledo v. United States, 581 F.3d 678, 681 (8th Cir. Mo. 2009)("Counsel is not accountable for unknown future changes in the law."); Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990)(counsel not ineffective for failing to foresee "a significant change in the existing law"). The Court finds that counsel's performance was reasonable based upon existing law at the time of trial.

Moreover, as discussed previously, any objection based upon Crawford would have been meritless. Counsel is not required to make a meritless objection to withstand an ineffective assistance

---

[20]Strong argues that the Crawford litigation was the subject of a published opinion by the time of his trial in March 2003. (Traverse, p. 41 (citing State v. Crawford, 54 P.3d 656 (Wash. 2002)). Obviously, the Washington state court is not controlling precedent for Missouri courts. Strong cites to no precedent for the proposition that defense counsel was ineffective for failing to research another state court's ruling.

of counsel claim. See Gray v. Bowersox, 281 F.3d 749, 756, n. 3 (8th Cir. 2002); Garrett v. United States, 78 F.3d 1296, 1303, n. 11 (8th Cir. 1996)("Ineffective assistance should not be found under Strickland when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made."); Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991)("because the claim lacks merit, Thomas' attorney was not ineffective for failing to raise it").

Finally, even if defense counsel should have objected, Strong's ineffective assistance of counsel claim fails because Strong cannot demonstrate prejudice. Although Strong presents this testimony as "especially damaging" (Traverse, p. 41), Strong has presented no evidence that the jury would have sentenced him to life in prison if it had not heard about his assault on Eva. The jury heard sufficient evidence to sentence Strong to death absent the testimony regarding the assault.

Accordingly, the Court finds that the Missouri Supreme Court reasonably applied Strickland to Strong's claim of ineffective assistance of counsel.

## X. Ineffective Assistance of Counsel: Failing to Introduce Strong's Videotaped Statement to the Police at the Penalty Phase

Strong alleges ineffective assistance of trial counsel for failing to introduce his videotaped statement that he gave to police on the night of the killings. (Petition, p. 47). Strong claims that the videotape would have provided mitigating evidence, particularly Strong's remorseful behavior. Defense counsel tried to present his videotaped statement during the guilt phase of the trial, but the trial court sustained the prosecutor's objections that the statement was inadmissible because it was exculpatory and self-serving. (Id., p. 47). Defense counsel did not seek to introduce the videotape during the penalty phase. (Id., p. 47). Strong claims that he was prejudiced by his counsel's failure to introduce the videotape during the penalty phase and that his representation feel below the standard required in Strickland v. Washington. (Id., p. 49).

The Missouri Supreme Court rejected Strong's ineffective assistance of counsel claim because defense counsel chose not to introduce the videotape as part of his reasonable trial strategy.

> Trial counsel stated that showing the video during the penalty phase would have been inconsistent with counsel's guilt phase strategy and would have made the jury think that the "wool was getting pulled over their eyes." Trial counsel noted that Mr. Strong blamed Ms. Washington for killing Zandrea, denied the killings, and stated he did not remember the murders during the videotaped statement. Trial counsel felt there was too much negative information to utilize the videotape during the penalty phase.

> The record demonstrates that trial counsel acted professionally in making decisions, and trial counsel's decision not to seek admission of a video containing many contradictory statements fails to establish ineffective assistance of counsel.

Strong v. State, 263 S.W.3d at 654.

The Court finds that the Missouri Supreme Court's analysis reasonably applied the Strickland standard regarding ineffective assistance of counsel. Strong has not met his burden of demonstrating that his counsel's decision not to show the videotape during the penalty phase constituted unreasonable trial strategy.

On the videotape, Strong gave inconsistent explanations for stabbing Eva and Zandrea. Strong alternated between not remembering what happened or what caused him to stab her and claiming that she had attacked him. (Resp. Ex. Z, pp. 342, 347, 359, 361-62, 365-67, 371-74, 376-77, 379). Sometimes he claimed that Eva did not thing wrong, and other times he claimed that Eva stabbed and punched him first. (Id.). Strong also would apologize, but would not explain the reason he was sorry. (Id., pp. 348). Strong never accepted responsibility or explained why he hurt Eva and Zandrea.

At his deposition, trial counsel stated that he did not attempt to have the videotape admitted because he felt that there were "too many negative things" in the videotape. (Resp. Ex. EE/38, p. 129). Defense counsel stated that he did not recall Strong expressing any unsolicited remorse. (Id.,

pp. 129-30).  Rather, the videotape showed several instances where Strong showed no remorse and did not accept responsibility, such as claiming he did not remember the murders and blaming Eva for killing Zandrea.  (Id., p. 222-23 ).  In addition, defense counsel was worried that if he tried to put on evidence that Strong felt remorse, then that would open the door to the state's evidence of Strong's many other, bad acts.  (Id., p. 130).  Furthermore, defense counsel worried that statements in the videotape were inconsistent with the story that he had presented to the jury during the guilt phase of the trial.  (Id., pp. 130, 190-91) ("I think that there would be a lot of people thinking that the wool was getting pulled over their eyes...").  Based upon these factors, defense counsel felt that presenting the videotape to the jury would have been more harmful than helpful.

The Court finds that defense counsel was not ineffective for not presenting evidence that would have  been inconsistent with their defense strategy.  See Burger v. Kemp, 483 U.S. 776, 790, n. 7 (1987)(in a capital habeas case, the "issue is whether counsel acted reasonably in deciding not to introduce the evidence out of apprehension that it would contribute little to his client's chances of obtaining a life sentence while revealing possibly damaging details about his past and allowing foreseeably devastating cross-examination").  The Missouri Supreme Court correctly applied Strickland by finding that defense counsel acted reasonably in not introducing the videotape during the penalty phase of the trial.

In addition, the Court finds that even if it had been unreasonable for defense counsel not to seek the admission of the videotape, defense counsel, nevertheless, was not ineffective because Strong suffered no prejudice.  That is, Strong was not prejudiced because the videotape would have been inadmissible.   Evidence supporting any of the mitigating circumstances "may be presented subject to the rules of evidence at criminal trials."  Mo.Rev.Stat. §565.030.4.  A defendant's self-serving statements, however, are inadmissible.  United States v. Edwards, 159 F.3d 1117, 1127 (8th Cir. 1998) ("exculpatory out-of-court declarations are not admissible hearsay, even if they include

a statement against the declarant's penal interest"); <u>State v. Beishline</u>, 920 S.W.2d 622, 626-27 (Mo. Ct. App. 1996)("A defendant cannot create exculpatory evidence by introducing self-serving, hearsay statements which are not part of the offense's *res gestae*."); <u>State v. Sweet</u>, 796 S.W.2d 607, 614 (Mo. 1990), cert. denied, 499 U.S. 932, 113 L. Ed. 2d 270, 111 S. Ct. 1339 (1991)(Defendant's statement "was a self-serving declaration not part of the *res gestae* and thus plainly inadmissible."). The Court also does not believe it would have been admissible based upon any purported violations of Strong's due process rights. (Traverse, pp. 45-46 (noting an exception to the hearsay rule when the defendant's due process rights are otherwise violated)). Thus, even if defense counsel had attempted to admit Strong's videotaped statements, those statements would have been inadmissible hearsay.

Finally, the Court believes that Strong also was not prejudiced because the videotape was not admitted. From reviewing the transcript of the videotape, Strong does not accept responsibility or express strong remorse during the questioning. Instead, Strong often claims not to remember why he committed the murders or why he became so angry. (Resp. Ex. Z, pp. 361, 371, 379). The Court does not believe that the videotape would have engendered support or sympathy from the jury and, therefore, does not believe that he would have benefitted from its admittance. Thus, Strong cannot demonstrate <u>Strickland</u> prejudice.

The Court finds that the Missouri Supreme Court did not unreasonably apply <u>Strickland</u> to Strong's ineffective assistance of counsel claim, and the Court denies this ground for relief.

## XI.     Ineffective Assistance of Counsel: Failure to Present Evidence of Strong's Background and to Present All Reasonably Available Mitigating Evidence

Strong claims that his trial counsel was ineffective for failing to present evidence of his poor and abusive background that would have provided mitigating evidence. (Petition, p. 50). Strong's family members had histories of mental illness, including a suicide attempt by his mother. (<u>Id.</u>, p. 53).

Strong grew up in a poor family and in a violent household and unsafe neighborhoods. (Id., pp. 53-54). He had been sexually abused, had low intellectual functioning and suffered from seizure-like symptoms. (Id., p. 54). He asserts that trial counsel failed to investigate and utilize mental health experts who could have testified regarding the impact of Strong's upbringing upon him. (Id., p. 50).

The state also presented evidence that Strong had assaulted his ex-wife, Kim Strong, and his former girlfriends, Lutricia Braggs and Eva Washington. (Id., pp. 50-51). In response, defense counsel attempted to portray Strong's positive traits as a hard worker and dedicated family man. (Id., p. 51). Strong claims that defense counsel, however, failed to investigate and present evidence of Strong's background that would explain why he committed these murders. (Id., p. 53). Instead, Mr. Dede delegated investigation of Strong's background to a recent law school graduate. (Id., p. 53 (citing Resp. Ex. EE/38, pp. 13)). Strong asserts that defense counsel did not consult with any experts because Strong's family did not have any resources to pay experts. Strong asserts, without any legal support, that an adequate mitigation investigation takes years and requires the expertise of a trained mitigation specialist. (Traverse, p. 50).[21] Strong claims that if defense counsel adequately investigated his background then he would have discovered "a plethora of evidence that reasonably could have persuaded the jury to return a life sentence." (Petition, p. 53).

Strong complains that defense counsel did not investigate any experts who would have provided an explanation for the killings. During a post-conviction deposition, Dr. Wanda Draper

_____

[21]Strong claims that defense counsel should have employed a mitigation specialist, as recommended under ABA Guideline 4.1.A.2. (Traverse, p. 56). This Court notes that "[a]lthough in assessing the reasonableness of counsel's performance the Supreme Court has looked to sources such as the ABA Capital Sentencing Guidelines, see, e.g., [Rompilla v. Beard, 545 U.S. 374, 387, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)]; [Wiggins v. Smith, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)], '[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant,' Strickland, 466 U.S. at 688-89." Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011).

concluded that Strong suffered from "a severe disorganized attachment," never received healthy nurturing for development and that his brain did not develop normally. (Id., p. 55). Also at postconviction deposition, Dr. Marilyn Hutchison diagnosed Strong with Major Depression, Recurrent; Obsessive Compulsive Disorder; Post-Traumatic Stress Disorder; Adjustment Disorder, subject to incarceration; Reading Disorder; Dissociative Identity Disorder; and Schizotypal Personality Disorder with Dependent Features. (Id., p. 55). Dr. Hutchison determined that, at the time of the offense, Strong suffered from extreme mental distress or emotional disturbance that impaired his capacity to conform his conduct to the requirements of the law. (Id., pp. 55, 58).[22]

The Missouri Supreme Court, however, found that defense counsel performed a sufficient investigation and presentation regarding Strong's background:

> Mr. Strong asserts that the motion court clearly erred in failing to find trial counsel ineffective due to his failure to investigate and call certain mitigation witnesses in the penalty phase. Mr. Strong acknowledges that trial counsel presented mitigation evidence during the penalty phase that Mr. Strong was of good character. Nevertheless, he asserts that trial counsel was ineffective in failing to present evidence of Mr. Strong's complete social history and an explanation of how that social history impacted his behavior throughout his life and on the day of the murders. He claims that this evidence would show that his violent acts were the result of a violent, abusive, and traumatic life. Mr. Strong asserts that a reasonably diligent attorney would have contacted witnesses to testify on these issues and utilized their testimony during the penalty phase.
>
> The choice of witnesses is ordinarily a matter of trial strategy and will not support an ineffective assistance of counsel claim. State v. Harris, 870 S.W.2d 798, 816 (Mo. banc 1994). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at

---

[22]The Court that addressed Strong's 29.15 claim determined that Dr. Draper's and Dr. Hutchison's (referred to in the 29.15 opinion as Hutchingson) diagnoses were suspect. Both Draper and Hutchison conceded that they relied on statements by the Strong's family, who had a motivation to lie. (Resp. Ex. AA, p. 442). They had no independent records or other proof to verify the family's statements or show any abuse, impairment or illness. (Id.). Draper and Hutchison conceded that they had a close working relationship with the public defender's office and that they were paid for their services only if they concluded that the defendant had mitigating circumstances surrounding his case. (Id.; see id., p. 440-41 ("Counsel on a death penalty case cannot be faulted for failing to shop for a psychiatrist who would testify more favorably.")).

816-17 (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). In addition, "the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." <u>Rompilla v. Beard</u>, 545 U.S. 374, 383, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). To prevail on a claim of ineffective assistance of counsel for failing to call a witness, a defendant must show that:

(1) trial counsel knew or should have known of the existence of the witness,

(2) the witness could be located through reasonable investigation,

(3) the witness would testify, and

(4) the witness's testimony would have produced a viable defense. <u>Hutchison v. State</u>, 150 S.W.3d 292, 304 (Mo. banc 2004).

Mr. Strong claims that trial counsel should have called his friend, Lamont Netter, to testify to his poor childhood. Mr. Strong also asserts that trial counsel should have called experts such as Dr. Wanda Draper and Dr. Marilyn Hutchinson during the penalty phase to explain that the murders were caused by the uncontrollable mental illness Mr. Strong suffered due to his impoverished childhood filled with neglect, violence, and abuse.

Mr. Strong failed to identify Mr. Netter as a witness and, even if he did, there is no indication that the testimony would produce a viable defense. The record indicates that Mr. Strong was a very uncooperative and unhelpful client who hindered, as opposed to assisted, his attorneys. Trial counsel located numerous witnesses and, in fact, called fifteen witnesses during the penalty phase, all of whom provided positive information about Mr. Strong. Mr. Strong's identification of one witness, whose name he did not provide and who could only provide information as to Mr. Strong's difficult childhood, does not demonstrate ineffective assistance.

Regarding the two experts, there was evidence to support the motion court's finding that trial counsel's decision not to utilize experts in this context was a valid trial strategy decision. Trial counsel stated that he relied on multiple witnesses who stated positive things about Mr. Strong as trial counsel attempted to demonstrate that Mr. Strong's life was worth saving. Counsel testified that he believed that the best strategy was to show Mr. Strong as a good man, able to do good things -- not to blame Mr. Strong's actions on a bad childhood. Trial counsel also expressed his belief that blaming Mr. Strong's actions on events in the distant past could appear to a jury as making excuses, which might alienate or offend a jury. "Trial counsel has nearly unfettered discretion as to what evidence to admit in presenting a case, as well as which witnesses to call." <u>Matthews v. State</u>, 175 S.W.3d 110, 116 (Mo. banc 2005). In light of counsel's beliefs, and the great discretion afforded him, trial counsel's failure to call experts, such as Dr. Draper and Dr. Hutchinson, is reasonable and within the discretion of counsel.

Finally, Mr. Strong asserts that counsel should have asked different questions of his mother, Joyce Knox, and uncle, Wayne Garner, than those asked at trial. Once again, trial counsel's line of questioning demonstrates reasonable trial strategy and is within his discretion. See id.

The record demonstrates a thorough investigation by trial counsel into mitigation evidence and, given the information received from his investigation, he proceeded in a reasonable manner. Nothing about trial counsel's strategy indicates any failure to utilize the skill, care, or diligence of a reasonable attorney. The trial court's denial of the claim of ineffective assistance of counsel was not clear error.

Strong v. State, 263 S.W.3d at 652-53.

The Court finds that the Missouri Supreme Court reasonably applied the Strickland test to Strong's ineffective assistance of counsel claim. The evidence reflects that defense counsel made a reasonable investigation into Strong's claims and crafted Strong's defense accordingly.

A.    Family/Upbringing

Contrary to Strong's claims, defense counsel investigated his claims of a traumatic childhood. Strong's family, however, did not report such abuse to defense counsel. (Resp. Ex. EE/38, pp. 96-97, 103-07, 114). In fact, during his evaluation by Dr. Rabun and his intake reports to various prisons, Strong repeatedly denied suffering any physical, mental and sexual abuse. (Id., pp. 181-82). Similarly, defense counsel was not told that the family suffered from extreme poverty when Strong was small. (Id., pp. 103-04, 111-12). To the contrary, Strong's family, including his mother, did not provide any indication to defense counsel that Strong had a particularly difficult childhood. (Id., p. 100).[23] Defense counsel claims that he was not given substantial enough information from Strong and his family to present evidence of his social history to the jury. (Id., p. 187).

---

[23]In his Traverse, Strong continues to demand that defense counsel should have uncovered Strong's troubled childhood, even though his family failed to mention the alleged abuse, poverty and violence during his discussions with them. See Traverse, pp. 46-65.

Strong did not cooperate with his counsel regarding obtaining information to support his defense. (Id., pp. 177-78). He either refused to participate in or did not assist in being psychologically evaluated. (Id., pp. 57, 61-67, 151-53, 221). Strong did not provide his counsel with a list of names of people to interview. (Id., pp. 177-78).

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, 545 U.S. 374, 383 (2005). "Questioning a few more family members and searching for old records can promise less than looking for a needle in a haystack, when a lawyer truly has reason to doubt there is any needle there." Id. at 389. Thus, based upon his reasonable investigation, defense counsel had no reason to believe that additional investigation of or presenting evidence regarding Strong's family upbringing would have made his sentence more lenient.

B.    Experts

Strong argues that defense counsel was ineffective for failing to utilize experts to testify regarding his mental illness. Defense counsel testified that he discussed the issue with Strong and his family, but did not go out and "try to buy a doctor." (Resp. Ex. EE/38, p. 186).

In addition, Strong told his counsel that he didn't want to pursue a "psych defense." (Id., p. 221). Strong also refused to participate in a psychological examination on two different occasions. (Id., pp. pp. 57, 61-67, 151-53, 221). Dr. Rabun evaluated Strong on two different occasions (once by observation due to Strong's refusal to participate, and once by examination), and Dr. Rabun could not find any evidence to suggest that Strong was afflicted by a mental disorder. (Resp. Ex. EE/1, pp. 254-64, 265-74). Accordingly, his counsel believed it would be pointless to obtain more records regarding Strong's psychological issues. (Id.).

The Court finds that the trial court reasonably determined that defense counsel's decision not to obtain another psychological examination was proper. No evidence suggests the court-ordered psychiatric evaluation "was flawed." Cox v. United States, 294 F.3d 959, 960 (8th Cir. 2002)(counsel was not ineffective for failing to request an independent psychiatric evaluation). The mere fact that Strong now presents a psychiatric evaluation that purports to find that he suffers from some mental deficiency does not meant hat defense counsel was ineffective. Marcrum, 509 F.3d at 511 ("Where counsel has obtained the assistance of a qualified expert on the issue of the defendant's sanity and nothing has happened that should have alerted counsel to any reason why the expert's advice was inadequate, counsel has no obligation to shop for a better opinion."). The Court finds that defense counsel was not ineffective for failing to obtain an expert in this case.

C.      Inconsistent with Trial Strategy

As part of his strategy during the penalty phase, defense counsel wanted to create a "contemporaneous" picture of Strong and not focus on events that occurred when he was little, such as his father going to prison. (Resp. Ex. EE/38, pp. 97-98, 100). Defense counsel did not think Strong's case would benefit from presenting every detail of his childhood. (Id., pp. 101-02). Rather, defense counsel felt that presenting evidence of Strong's childhood and social history would have "dulled the contrast" between Strong as an adult, family man and the version of Strong the state portrayed. (Id., pp. 179-80). Counsel presented evidence during the penalty phase that Strong was a good and loving person, who did "wonderful things." (Id., pp. 121, 177). Counsel stated that, even if he had known of Strong's supposed abusive and poverty-stricken childhood, he likely would not have presented that evidence to the jury. Counsel felt it would have been unpersuasive and would have undermined his argument from his guilt phase that he was innocent. (Id., pp. 187-91, 197-201). Counsel did not want to open the door to Strong's history of violent behavior, which would not support the claim that he was a loving person. (Id., pp. 197-201).

Thus, the Court finds that defense counsel acted reasonably in not presenting evidence of Strong's alleged abusive and impoverished childhood during the penalty phase of the trial. Evidence regarding Strong's childhood would not have comported with the theory of defense. Based upon all of this, the Court finds that the Missouri Supreme Court was reasonable in finding that Strong cannot satisfy the first prong of the Strickland test.

Strong also cannot satisfy the second, prejudice prong of the Strickland test. Strong has provided the Court with no bases for finding that Strong would not have received a death sentence if he had informed the jury of his upbringing. See Garcia v. Bertsch, 470 F.3d 748, 756-57 (8th Cir. 2006)(the North Dakota Supreme Court was not objectively unreasonable in finding that there was "no reasonable probability that the sentence would have been less harsh if the additional mitigating evidence had been presented"). The Court denies this ground for relief.

## XII.   Fundamentally Unfair Penalty Proceeding

Strong claims that he was denied his right to a fair penalty phase proceeding because the prosecutor projected photographs of the victims prior to the attack, of the victims' autopsies, of the weapon used in the attack and of his mugshot during the prosecutor's closing arguments. (Petition, pp. 58-59). Strong claims that the prosecutor's presentation appealed to and inflamed the passions and prejudices of the jury and rendered the jury's sentence unreliable in violation of the Fifth, Eighth and Fourteenth Amendments. (Id.).

The Missouri Supreme Court rejected Strong's claim:

> Strong contends the trial court erred during the penalty phase in admitting several photographs of Eva and Zandrea at the scene and during the autopsies and in letting the state present photographs as part of a computerized slide show during its penalty phase closing argument. Strong claims the prejudicial impact of these exhibits vastly outweighed their probative value as they were irrelevant and were admitted "solely to engender passion and prejudice" and because "their duplicative nature compounded the prejudice from each individual view." [...]

The criteria for the admission of photographs discussed in [ground five with respect to the guilt phase] also apply to this argument. All of the photographs challenged in this point were also previously discussed in [ground five]. The trial court did not abuse its discretion in admitting them during the penalty phase. [...]

The state contends it employed the slide show to establish the statutory aggravator in section 565.032.2(7), which required it to demonstrate that the murders were "outrageously or wantonly vile, horrible or inhuman" in that they involved "torture, or depravity of mind." The state was also required to prove that Strong "committed repeated and excessive acts of physical abuse" upon the victims and that the killings were "unreasonably brutal" as a result. See MAI-CR3d 313.40.

Strong contends the computerized slide show was more prejudicial than probative because it resulted in the jury's being "bombarded with a host of graphic, color images." As Strong notes in his brief, the slide show depicted photographs of "Eva and Zandrea before the events in question; Eva and Zandrea at the scene and during the autopsies; the butcher knife and [Strong's mug shot], superimposed on the other images." Nearly all of the photographs contained in the slide show were previously admitted, and those not admitted lacked prejudice as they merely contained innocuous photographs of the victims.

"Gruesome crimes produce gruesome, yet probative, photographs, and a defendant may not escape the brutality of his own actions." State v. Wolfe, 13 S.W.3d 248, 264 (Mo. banc 2000). Strong fails to establish that the slide presentation during the penalty phase prompted the jury to act other than on the basis of reason. The trial court did not abuse its discretion in permitting the state to display a slide show to the jurors during the penalty phase.

State v. Strong, 142 S.W.3d at 720-721.

As previously discussed with respect to ground five, all of the images at issue had been previously admitted to show the scene of the crime, the identity of the victims, the nature and extent of the wounds, the causes of death, the condition and location of the bodies and Strong's mental state at the time of the murders. State v. Strong, 142 S.W.3d at 715-16. The mere fact that these photographs were gruesome does not make them unconstitutional. See Kuntzelman, 774 F.2d at 292 (where the "flagrantly gruesome" photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent" of the defendant, the defendant was not deprived of fundamental fairness); United States v. Salameh, 152 F.3d 88, 123 (2d Cir. 1998) (photographs of bombmaking probative of the existence of the

conspiracy); State v. Wolfe, 13 S.W.3d at 264 (no abuse of discretion in using blown-up photographs of the victims during the sentencing phase).

There is no doubt that the photographs of the victims were shocking, and a significant amount of such evidence was admitted. Nevertheless, the evidence were probative during the penalty phase because they were relevant in proving aggravating circumstances, especially depravity-of-mind. Middleton v. Roper, 498 F.3d 812, 820 (8th Cir. 2007)(photographic evidence of criminal acts was "relevant to the sentencing decision"); State v. Wolfe, 13 S.W.3d at 264 ("Photographs may be used in the sentencing phase of a capital case to establish the aggravating circumstances."); United States v. Ortiz, 315 F.3d 873, 897 (8th Cir. 2002)(in a capital case, the photographs of the victim's bloody corpse were probative because, in part, they supported the government's contention that the crime was particularly heinous and depraved). Eighth Circuit law has consistently upheld admission of similar evidence against due process challenges and provides support for the view that the state court's application of Supreme Court precedent was at least objectively reasonable. Middleton, 498 F.3d at 820-821 (citing Clark v. Wood, 823 F.2d 1241, 1246-47 (8th Cir. 1987) (holding no due process violation where trial court admitted "graphic and detailed pictures" of a victim in an uncharged murder, in addition to testimony of witnesses who described the scene "in detail," because photographs were relevant to show circumstances or background of the charged murder); Walle v. Sigler, 456 F.2d 1153, 1155 (8th Cir. 1972) (holding no due process violation in trial court's admission of "gruesome" photographs of uncleansed corpse, saying "it must be noted that this condition is an inherent and inseparable part of the crime with which this defendant was charged")).

Finally, Strong fails to show prejudice from the prosecutor's use of the photographs during the penalty phase because all of the supposedly inflammatory photography previously had been published to the jury during the guilt phase. See State v. Strong, 142 S.W.3d 721 ("Nearly all of the photographs contained in the slide show were previously admitted, and those not admitted lacked

prejudice as they merely contained innocuous photographs of the victims."). The Court also finds that the admission of the photographs, even if it had been erroneous, did not fatally infect the proceedings, because "'the jury's finding . . . clearly rests on a substantial factual basis, even absent the photographic evidence in controversy here[.]'" Rousan, 436 F.3d at 959 (citing Kuntzelman, 774 F.2d at 292).

Accordingly, the Court finds that the decision of the Missouri Supreme Court on this point was not contrary to, nor an unreasonable application of, clearly established federal law.

## XIII.   Ineffective Assistance of Counsel: Prosecutor's Penalty Phase Closing

Strong claims that his trial counsel was ineffective because he failed to object to the photograph presentation during the penalty phase of the trial. (Petition, p. 60). Trial counsel objected to the photographs during the guilt phase but was overruled. Strong claims that "[t]rial counsel's failure to make a timely objection to the prosecutor's improper presentation, and failure to make a record as to the reaction inside the courtroom that the presentation caused, fell below the standard of reasonableness required by Strickland v. Washington, 466 U.S. 668 (1984)." (Petition, pp. 61-62).

The Missouri Supreme Court addressed this issue and held that Strong "may not use post-conviction proceedings as 'a vehicle to obtain a second appellate review of matters raised on direct appeal.'" Strong v. State, 263 S.W.3d at 652 (citing Wilkins v. State, 802 S.W.2d 491, 497 (Mo. banc 1991)). That is, Strong could not use an ineffective assistance of counsel claim to re-litigate its previous rulings that the prosecutor properly utilized the photographs and that Strong had not shown that the photographs would cause the jurors to act on the basis of emotion, not reason. Id. The Court also held that Strong's claims that counsel was ineffective for failing to record the jury's emotion response to the photographs was barred from review because he did not make that

claim in his amended motion. Strong v. State, 263 S.W.3d at 652, n. 8. The Court finds that the Missouri Supreme Court's determination was not unreasonable.

In the alternative and as previously discussed, the prosecutor used the photographs during the penalty phase to demonstrate, among other things, the depravity-of-mind aggravator. Any objection made by defense counsel would have been meritless. Counsel is not required to make meritless arguments. See Gray, 281 F.3d at 756, n. 3; Garrett, 78 F.3d at 1303, n. 11; Thomas, 951 F.2d at 904. Again, the Missouri Supreme Court's determination was not unreasonable.

With respect to the claim that defense counsel was ineffective for failing to make a record of the jurors' reactions to the photographs, this claim is procedurally bared from federal habeas review because the Missouri Supreme Court determined that this claim was unreviewable. Strong v. State, 263 S.W.3d at 652, n. 8. Strong has not tried to excuse his procedural default on this issue by showing cause and prejudice or actual innocence. Clemons, 381 F.3d at 751-52. Accordingly, this Court cannot review this claim.

Likewise, the Court also finds that Strong's claim that defense counsel should have objected and that he should have made a record of the reactions of the jurors lacks merit. At the post-conviction evidentiary hearing, defense counsel testified that he viewed the prosecutor's digital slide show prior to it being presented to the jury, and that he objected, in chambers, to the enlarging and superimposing of photographs. (Resp. Ex. EE/38, pp. 138, 141). Defense counsel also testified that he did not hear any gasps or other, audible reactions from the jurors as they viewed the photographs. (Id., p. 140).[24] Strong has not demonstrated that any juror made any visible or audible reaction to the

---

[24]Co-defense counsel, Patrick Malone, testified that he heard some reaction from the gallery from nonjurors and that someone may have left the courtroom during the presentation. (Resp. Ex. EE/39, p. 47).

slide show. Therefore, Strong cannot demonstrate that his counsel was ineffective for failing to record a reaction that, from all accounts, never occurred.

Therefore, the Court finds that the Missouri Supreme Court correctly applied federal law on this point when it found that defense counsel was effective.

## XIV. Failure to Properly Instruct the Jury on their Consideration of Non-statutory Aggravators

Strong claims that his death sentence violates the Eighth Amendment because the trial court permitted the jury to consider evidence of non-statutory aggravating circumstances, including prior assaults on Eva Washington, Kimberly Strong (his ex-wife), and Lutricia Braggs (his former co-worker). (Petition, p. 62).[25] These prior assaults, however, were never adjudicated. (Id., p. 63). Strong claims that the trial court failed to instruct the jury that the state had to prove, and the jury had to find the existence of those non-statutory aggravators beyond a reasonable doubt before they could consider those aggravators in their sentencing decision. (Id., pp. 63-64 (citing MAI-CR 313.41B)). See State v. Johnson, 284 S.W.3d 561, 585 (Mo. 2009)(citing State v. Gill, 167 S.W.3d 184, 193 (Mo. banc 2005))("Under section 565.030.4, the jury is required to find a statutory aggravating circumstance beyond a reasonable doubt."). Strong asserts that because there has been no finding or instruction to the jury that he committed the assaults beyond a reasonable doubt, Strong's Fifth, Sixth, Eighth and Fourteenth Amendment rights have been violated. (Id., p. 64).

On appeal, the Missouri Supreme Court held that Strong's claim was without merit:

> Strong's ex-wife testified that when she was four-and-a-half months pregnant with her second child by Strong, she met Strong to exchange custody of their son

---

[25]Strong's claim differs from the claim presented to the Missouri Supreme Court. At the Missouri Supreme Court, Strong argued that evidence of his prior assaults was inadmissible during the penalty phase and that, even if it were admissible, the jury had to find the existence of those assaults beyond a reasonable doubt. (Resp. Ex. A, p. 66). Here, Strong only argues that the state had to prove those assaults beyond a reasonable doubt; he has abandoned the admissibility argument. (Petition, p. 62).

since they were separated. She testified that Strong "started striking" her at that time. The police were called. After the police left, she again attempted to leave with her son in her arms. This time, Strong began "pushing and hitting" and then struck her from behind "a couple of times in different places." She said he hit her on the ear and almost caused her to lose consciousness.

A former coworker of Strong's testified that when she worked with Strong, she and her boyfriend would occasionally socialize with him and his ex-wife. The coworker said that she and Strong were "close" and even went out alone a few times. She was driving a car with Strong in the passenger seat when she told him of her decision to terminate their social relationship. She testified that, while she was telling him they could no longer associate, "he got upset" and "grabbed the steering wheel and took [the car] into oncoming traffic."

While she attempted to regain control of the car, "he was yelling and cursing and proceeded to hit [her] in [her] face and wherever he could." She said the next thing she recalled was being awakened by the police. The car had hit the sidewalk, hopped the curb, and stopped. When she awoke, she "was bloody and in a lot of pain." Photographs of her face after this incident were admitted into evidence.

Two different witnesses testified as to prior assaults on Eva. The previous section of this opinion included the testimony of the police officer who responded to the 911 call on November 10, 1999, at 11:30 p.m., when Eva was assaulted. A friend of Eva's also testified as to that same incident. The friend said that Eva called her at 7 a.m. the next day and asked her to come over. The friend stated that Eva's "forehead was busted open, her left eye was closed shut, she had welts around her neck and handprints on her neck, and she had bruises on her arms."

The friend also testified that she had heard Strong on two occasions threaten to kill Eva. The second threat, according to the friend, occurred when Eva was pregnant with Strong's daughter. She testified she had overheard Strong say "he was going to get a chance to kill [Eva] and her baby."

Strong contends State v. Debler, 856 S.W.2d 641 (Mo. banc 1993), supports his claim that admitting unadjudicated bad acts constitutes error. This argument is unpersuasive as the error in Debler was lack of notice. State v. Glass, 136 S.W.3d 496, 517 (Mo. banc 2004); State v. Christeson, 50 S.W.3d 251, 269-70 (Mo. banc 2001); State v. Ervin, 979 S.W.2d 149, 158 (Mo. banc 1998).

"The trial court has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment." Glass, 136 S.W.3d at 517; State v. Six, 805 S.W.2d 159, 166 (Mo. banc 1991). The trial court did not err, plain or otherwise, in admitting the testimony about Strong's prior assaults on Eva, his ex-wife, or his former coworker.

State v. Strong, 142 S.W.3d at 719-20.

"Habeas corpus relief may be granted only when an erroneous jury instruction constituted 'a fundamental defect' that resulted 'in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial.'" Louisell v. Director of Iowa Dep't of Corrections, 178 F.3d 1019, 1022 (8th Cir. 1999)(quoting Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997)); Roberts v. Bowersox, 137 F.3d 1062, 1068 (8th Cir. 1998). Here, the trial court did not provide an erroneous jury instruction or one that resulted in a miscarriage of justice. Both parties agree that the prior assaults are non-statutory aggravating circumstances. (Petition, p. 64, Response, p. 87). Although Strong claims that the jury should have been instructed that the State had to prove the non-statutory aggravating circumstances beyond a reasonable doubt, the Missouri Supreme Court rejected this claim. State v. Strong, 142 S.W.3d at 720. The reasonable doubt standard does not apply to non-statutory aggravating factors. Id.

Moreover, Strong's claim fails because the Constitution does not require that non-statutory aggravating circumstances be proven beyond a reasonable doubt. The United States Supreme Court held that where aggravating factors operate as "the functional equivalent of an element of a greater offense," the Sixth Amendment requires that they be found by a jury. Ring v. Arizona, 536 U.S. 584, 602, 609 (2002) (citing Apprendi v. New Jersey, 530 U.S. 466 (2000)). This requirement, however, does not apply to non-statutory aggravating circumstances. United States v. Purkey, 428 F.3d 738, 749 (8th Cir. 2005)(the indictment needed to charge at least one statutory aggravating favor that was ultimately found by the petit jury in order to elevate the available statutory maximum sentence from life imprisonment to death; there is no requirement for the indictment to allege all of the non-statutory aggravating factors that might be weighed by a death-qualified jury); Wallace v. Davis, 362 F.3d 914, 916-17 (7th Cir. 2004)("Only statutory aggravating factors matter to the eligibility [for the death penalty] decision. After Ring, the distinction between facts that determine eligibility and those that influence the exercise of discretion is constitutionally based: the former decision must be made by the

trier of fact under the reasonable-doubt standard, while the latter decision may be entrusted to a judge on the preponderance standard, and with relaxed rules of evidence."); Housel v. Head, 238 F.3d 1289, 1297 (11th Cir. 2001)(in habeas action, jury can consider unadjudicated claims as non-statutory aggravating factors). In Purkey, the Eighth Circuit explained that, under the Federal Death Penalty Act, non-statutory aggravating factors are "neither sufficient nor necessary" for a sentence of death. 428 F.3d at 749. "Their purpose is merely to aid the sentencer in selecting the appropriate sentence from the available options ... on the basis of the character of the defendant and the circumstances of the crime." Id. at 749-50 (quotations omitted). Missouri law holds the same. State v. Bucklew, 973 S.W.2d 83, 96 (Mo. 1998)("Section 565.032.2 lists seventeen aggravating circumstances. In addition to these so-called statutory aggravating circumstances, the state may submit aggravating circumstances not listed in the statute. The purpose of relevant, non-statutory, aggravating circumstances is to permit the penalty-phase jury to have before it 'any evidence that assists' in the death-penalty-recommendation decision."); State v. Simmons, 955 S.W.2d 729, 742 (Mo. 1997)("Unlike statutory aggravators, however, nonstatutory aggravators are not designed to narrow the class of those eligible for death. Nonstatutory aggravators, however, perform no function in the 'eligibility' stage of capital sentencing; they are simply an incomplete list of facts relevant to whether or not the defendant should be sentenced to death at the 'selection' stage."). Thus, neither Ring nor Apprendi requires that a jury find non-statutory aggravating factors beyond a reasonable doubt.

The Court finds that the trial court properly instructed the jury in accordance with Ring. The jury was instructed that it had to find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt for Strong to be eligible for the death penalty. (Resp. Ex. G, pp. 549, 553-555). The jury found two statutory aggravating circumstances beyond a reasonable doubt, with respect to each murder charge. (Id., pp. 573-74). The State was not required to prove the non-

statutory aggravating factors beyond a reasonable doubt.[26]   The Court finds that the jury was

properly instructed and the Missouri Supreme Court did not unreasonably apply the law.  This ground

for relief is denied.

## XV.   Vague and Overbroad Statutory Aggravator

The jury found, as statutory aggravators, that the killings involved depravity of mind and were

outrageously and wantonly vile, horrible and inhuman because "the defendant committed repeated

and excessive acts of physical abuse upon [the victims] and the [killings were] therefore, unreasonably

brutal."  (Petition, p. 64; Resp. Ex. G, pp. 573-74).  The depravity of mind aggravator stated, in

relevant part, as follows:

> In determining the punishment to be assessed under Count I against the defendant for
> the murder of Eva Washington, you must first unanimously determine whether one
> or more of the following statutory aggravating circumstances exists:
> 2. Whether the murder of Eva Washington involved depravity of mind and whether,
> as a result thereof, the murder was outrageously and wantonly vile, horrible, and
> inhuman.  You can make a determination of depravity of mind only if you find the
> defendant committed repeated and excessive acts of physical abuse upon Eva
> Washington and the killing was therefore unreasonably brutal.[27]  (Petition, p. 65;
> Response, p. 93; Resp. Ex. G, pp. 549, 555).

Strong claims this instruction violates the Eighth Amendment because it is unconstitutionally

overbroad and vague because "it fails to properly channel the jury's discretion and narrow the class

_____

[26]In his Traverse, Strong claims that State v. Whitfield, 107 S.W.3d 253 (Mo. 2003) requires a finding of all the aggravating factors beyond a reasonable doubt.  (Traverse, pp. 63-64).  Strong misstates the holding of Whitfield, which only provided that "under Ring, a jury must determine all facts on which the legislature has predicated imposition of the death penalty."  Whitfield, 107 S.W.3d at 258.  Section 565.030.4 requires a finding "beyond a reasonable doubt at least one of the statutory aggravating circumstances set out in subsection 2 of section 565.032."  Id.  As discussed, the jury found two of the statutory aggravators beyond a reasonable doubt.  Thus, as required by Whitfield and Mo.Rev.Stat. 565.030, the jury determined all of the facts on which the legislature predicated imposition of the death penalty.

[27]The jury also received a depravity of mind aggravator instruction for the other victim, Zandrea Thomas.  Strong challenges both instructions.

of person subject to the death penalty." (Petition, p. 65). He argues that the trial court attempted to to save the aggravtor by instructing the jury to that it could find depravity of mind only if it found Strong "committed repeated and excessive acts of physical abuse" upon the victims and that the killings were unreasonably brutal. (Id.). Strong further claims that the jury should have been instructed that "physical abuse" be limited to conscious suffering by the victims. (Id.; Traverse, p. 66). Because the jury was not so instructed and because the jury did not find that the victims were conscious after the first blow, Strong argues that the instruction was unconstitutionally vague.

The Missouri Supreme Court rejected this claim:

> Strong argues that, under Godfrey v. Georgia, 446 U.S. 420, 428-29, 64 L. Ed. 2d 398, 100 S. Ct. 1759 (1980), and State v. Feltrop, 803 S.W.2d 1, 14-15 (Mo. banc 1991), this instruction can only survive a challenge for vagueness if an adequate limiting instruction accompanies the wantonly vile aggravating language. Strong's argument disregards that instructions 16 and 21, following MAI-CR3d 313.40, contain such a limiting instruction.

> Strong further argues that the limiting instruction, which required the jury to find that he "committed repeated and excessive acts of physical abuse upon [the victim] and the killing was therefore unreasonably brutal," can only pass constitutional muster "if the 'physical abuse' connotes conscious suffering by the victim." He cites Proffitt v. Florida, 428 U.S. 242, 255, 49 L. Ed. 2d 913, 96 S. Ct. 2960 (1976), to support this contention.

> In contrast to section 565.032.2(7), Florida's statutory aggravator at issue in Proffitt authorized imposition of the death penalty if the crime was "especially heinous, atrocious, or cruel." The Florida Supreme Court interpreted that aggravator to authorize the death penalty only in the instance of a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." Proffitt, 428 U.S. at 255. The U.S. Supreme Court held that the interpretation of that statute by the Florida Supreme Court provided adequate guidance for imposing sentences in capital cases and affirmed the defendant's death sentence. Id. at 255-56.

> Florida's interpretation of its statutory aggravator is inapposite to the instant appeal, and Proffitt does not support Strong's vagueness claim. In Missouri, "evidence that the murder victim or other victims at the murder scene were beaten or evidence that numerous wounds were inflicted upon a victim will support the aggravating circumstance" in section 565.032.2(7). State v. Griffin, 756 S.W.2d 475, 490 (Mo. banc 1988). Moreover, Strong's claim that this instruction is constitutionally infirm has been repeatedly rejected by this Court. State v. Johns, 34 S.W.3d 93, 115 (Mo. banc 2000); State v. Barnett, 980 S.W.2d 297, 309 (Mo. banc

1998); State v. Ervin, 979 S.W.2d 149, 166 (Mo. banc 1998); State v. Carter, 955 S.W.2d 548, 559 (Mo. banc 1997).
[...]

      Strong next contends that insufficient evidence existed to submit the instruction for the depravity of mind statutory aggravator to the jury. Both victims received "numerous wounds." Griffin, 756 S.W.2d at 490. The medical examiner testified that Eva had been stabbed 21 times and had five slash wounds and that two-year-old Zandrea was stabbed nine times and had 12 slash wounds. One of the police officers who arrived immediately after the murders testified that both victims had been slashed across the abdomen, causing their intestines to protrude. He testified that, in the room where the victims were found, there was blood "over the bed linen, the walls, the dresser, the TV, on the bodies." Another officer testified that both victims were "lying in large pools of blood" and that Zandrea's "throat was cut to the point where she was nearly decapitated." Sufficient evidence existed to submit this instruction to the jury as to both victims." The Missouri Supreme Court denied this point.

State v. Strong, 142 S.W.3d at 721-722.

"When analyzing a sufficiency of the evidence claim, the Court asks 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found' the aggravating factor 'beyond a reasonable doubt.'" Storey v. Roper, No. 4:05-CV-2073, 2008 U.S. Dist. LEXIS 46662, at *135 (E.D. Mo. June 16, 2008), aff'd 603 F.3d 507 (8th Cir. 2010)(quoting Lewis v. Jeffers, 497 U.S. 764, 781, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). Upon consideration, the Court finds that the Missouri Supreme Court did not unreasonably apply federal law in this determination. In Missouri, the statutory aggravator relating to depravity of mind, provides that a person will become eligible for the death penalty if the jury finds that "[t]he murder in the first degree was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind[.]" Mo. Rev. Stat. § 565.032.2(7). The Missouri Supreme Court followed Supreme Court precedent as set out in Godfrey v. Georgia and Proffitt v. Florida in finding that the instructions 16 and 21 contained adequate limiting instructions.[28] Similarly, this Court repeatedly has

---

[28]Instructions 16 provides:

"In determining the punishment to be assessed under Count I against the defendant for the murder of Eva Washington, you must first unanimously determine whether one or more of the

- 78 -

held that Missouri's depravity-of-mind instruction is constitutional. <u>Barnett v. Roper</u>, No. 4:03CV00614, 2006 U.S. Dist. LEXIS 60130, at *114 (E.D. Mo. Aug. 24, 2006)("[T]he Court finds the 'depravity of mind' instruction was sufficiently definite to guide the jury and avoid the arbitrary and capricious imposition of the death penalty."); <u>Roberts v. Bowersox</u>, 61 F. Supp. 2d 896, 937-38 (E.D. Mo. 1999)("The Court finds this limitation to be sufficiently specific so the depravity-of-mind instruction was not unconstitutionally vague."). The depravity-of-mind aggravator does not violate the Eighth Amendment.

Strong also claims that there was insufficient evidence to support this aggravator because the there was no evidence that either victim was conscious after the first blow. (Petition, p. 64). Strong erroneously claims that the depravity-of-mind aggravator can only be found if the victims experienced "conscious suffering," and the "state has presented no evidence to support hat either Eva or Zandrea were [sic] conscious after the first blow." (Petition, p. 65). Sufficient evidence, however, exists to support the depravity of mind aggravator. <u>See Storey v. Roper</u>, 2008 U.S. Dist. LEXIS 46662, at *136 (E.D. Mo. June 16, 2008)(sufficient evidence existed to support the depravity of mind aggravator where the beating resulting in six broken ribs, a six inch deep stab wound to the abdomen,

---

following statutory aggravating circumstances exists:

1. Whether the murder in the first degree was committed while the defendant was engaged in the commission or attempted commission of another unlawful homicide of Zandrea Thomas.

2. Whether the murder of Eva Washington involved depravity of the mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find the defendant committed repeated and excessive acts of physical abuse upon Eva Washington and the killing was therefore unreasonably brutal.

You are further instructed that the burden rests upon the state to prove at least one of the foregoing circumstances beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of that circumstance.

Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing statutory aggravating circumstances exists, you must return a verdict fixing the punishment of the defendant for life by the Department of Corrections without eligibility for probation or parole." (Resp. Ex. G, p. 549).

Instruction 21 is a parallel instruction with respect to Count II and the murder of Zandrea Thomas. (<u>Id.</u>, p. 555).

twenty blunt force impacts, and a slashed throat with enough force to expose her spinal column); Bell v. Cone, 543 U.S. 447, 459 (2005)("a killing wherein the victim is struck up to thirty times, causing an entire room to be covered with a spray of flying blood, and causing the victim's brains to extrude through the gaping hole in her skull" was sufficient for the depravity of mind aggravator). Here, both victims received "numerous wounds." State v. Strong, 142 S.W.3d at 722. Eva was stabbed 21 times and had five slash wounds and two-year-old Zandrea was stabbed nine times and had 12 slash wounds. Id. Both victims had been slashed across the abdomen, causing their intestines to protrude. Id. The medical examiner, Dr. Turgeon, testified that none of the wounds suffered by Washington would have resulted in instantaneous death or unconsciousness in isolation; rather, it would have taken at least a few minutes for her to lose consciousness. (Resp. Ex. M, pp. 1323-65). In addition, in the room where the victims were found, there was blood "over the bed linen, the walls, the dresser, the TV, on the bodies," and Zandrea's "throat was cut to the point where she was nearly decapitated." State v. Strong, 142 S.W.3d at 722.

Finally, even if the depravity-of-mind aggravator were defective, the jury also found that each murder was committed during the commission of another unlawful homicide. (Resp. Ex. G., pp. 549, 555, 573-74). Thus, the jury's finding of the existence of the second aggravating circumstance eliminates any prejudice that may have arisen from the allegedly erroneous depravity-of-mind aggravator. See Rousan, 436 F.3d at 963 (citing Brown v. Sanders, 163 L. Ed. 2d 723, 734 (2006))(jury's consideration of invalidated eligibility factors do not render a death sentence unconstitutional where at least one eligibility factor was valid and "all of the aggravating facts and circumstances that the invalidated factor permitted the jury to consider were also open to their proper consideration under one of the other factors").

The Court finds that the Missouri Supreme Court did not contravene or unreasonably apply clearly established federal law in rejecting Strong's challenges to the constitutionality of the depravity-of-mind aggravator. Strong's point is denied.

## XVI. Excessive and Disproportionate Death Sentence

Strong argues that his death sentence was unconstitutional because it violates the requirements of Missouri's proportionality review under §565.035.3(3). (Petition, p. 66). First, Strong claims that the death sentence was imposed under the influence of passion, prejudice, or another arbitrary factor. In support of this, Strong notes that the death sentence was imposed after the prosecution display gruesome and duplicative photographs of the victims during his closing statement. (Id.). Second, Strong claims that the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering the crimes, the strength of the evidence, and the defendant. (Id.). Strong claims that Missouri does not properly conduct its proportionality review because it does not include cases that resulted in a life sentence as a result of a negotiated guilty plea or cases where a life sentence was not appealed. (Id.). The Missouri Supreme Court only compared Strong's sentence to similar cases in which the death penalty was imposed. (Traverse, p. 68).

Pursuant to Mo. Rev. Stat. §565.035.3, the Missouri Supreme Court must review all death sentences and determine "(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found; and (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant."

The Missouri Supreme Court conducted this review and found no error:

Having thoroughly reviewed the record, this Court concludes that there is no evidence to suggest that the punishment imposed was a product of passion, prejudice, or any other arbitrary factor.

The trial court's findings are next reviewed to determine if the evidence supports, beyond a reasonable doubt, the existence of an aggravating circumstance and any other circumstance found. In this case, the jury unanimously found two statutory aggravating circumstances as grounds for considering the death sentence. See sec. 565.032.2(2), (7). The evidence supports, beyond a reasonable doubt, a finding that Strong committed the murders of Eva and Zandrea while he was engaged in the commission of another unlawful homicide and that both murders were outrageously or wantonly vile, horrible or inhuman in that they involved depravity of mind.

This Court has upheld sentences of death in similar cases where the defendant murdered more than one person. State v. Tisius, 92 S.W.3d 751 (Mo. banc 2002); State v. Wolfe, 13 S.W.3d 248 (Mo. banc 2000); State v. Middleton, 998 S.W.2d 520 (Mo. banc 1999); State v. Johnson, 968 S.W.2d 123 (Mo. banc 1998); State v. Hutchison, 957 S.W.2d 757 (Mo. banc 1997). This Court has also upheld death sentences in cases where the murder involved acts of brutality and abuse that showed depravity of mind. State v. Williams, 97 S.W.3d 462 (Mo. banc 2003); State v. Cole, 71 S.W.3d 163 (Mo. banc 2002); State v. Christeson, 50 S.W.3d 251 (Mo. banc 2001); State v. Storey, 40 S.W.3d 898 (Mo. banc 2001); State v. Smith, 32 S.W.3d 532 (Mo. banc 2000).

The penalty in this case is neither excessive nor disproportionate in light of the crimes and the strength of the evidence.

State v. Strong, 142 S.W.3d at 728.

Given the Missouri Supreme Court's determination that Strong's sentence "is neither excessive nor disproportionate in light of the crimes and strength of the evidence," the federal court cannot conduct any further habeas review as there is no constitutional violation. Although Missouri statute requires the Supreme Court to undertake a comparative review of all verdicts in which capital punishment was imposed instead of life, "[t]he Eighth Amendment does not require that courts compare the sentences imposed in similar cases." Foster v. Delo, 39 F.3d 873, 882 (8th Cir. Mo. 1994)(citing Pulley v. Harris, 465 U.S. 37, 48-51, 79 L. Ed. 2d 29, 104 S. Ct. 871 (1984); Jurek v. Texas, 428 U.S. 262, 49 L. Ed. 2d 929, 96 S. Ct. 2950 (1976)).

Nevertheless, where a state creates a right, such as a defendant's right to a review of his sentence, the Fourteenth Amendment entitles him to procedures to ensure that the right is not arbitrarily denied. Foster, 39 F.3d at 882 (citing Wolff v. McDonnell, 418 U.S. 539, 557, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974)). Here, "the Missouri Supreme Court conducted the relevant review in this case and concluded that the punishment was not disproportional to that imposed for similar crimes in similar cases." Foster, 39 F.3d at 882. Accordingly, Strong's claim lacks merit and this point is denied.

## XVII. Motion Court Erred in Refusing to Allow Postconviction Counsel to Interview the Jurors in Strong's Case

The motion court denied postconviction counsel's request to interview jurors to investigate and prove Strong's claims that trial counsel was ineffective in jury selection. (Petition, p. 67). Strong argues that these interviews were necessary to prove postconviction counsel's claim that trial counsel was ineffective (1) for failing to voir dire jurors on the gruesome photos of the victims and the jurors' ability to consider mitigating circumstances given those photos and (2) for failing to object to the prosecutor's striking venirepersons Luke Bobo and Sylvia Stevenson because of their religious beliefs and for failing to investigate any other claims regarding the jurors. (Id.). After the motion court denied counsel's request to interview jurors, the court rejected Strong's ineffective assistance of counsel claim for failing to provide any support for the claim. (Id.). The motion court criticized Strong for not calling any of the venire persons from the original trial. (Id.). Strong claims the motion court violated his rights to due process, a fair trial, effective assistance of counsel, and freedom from cruel and unusual punishment under the Fifth, Sixth and Eighth Amendments. (Id., p. 68).

Strong's claim fails for two reasons. First, such a claim is not proper under federal habeas review. 28 U.S.C. §2254 provides review for violations of federal law leading to a criminal conviction in state court or on direct appeal, but not for violations on collateral review. Kenley v.

Bowersox, 228 F.3d 934 (8th Cir. 2000)(noting that a claim of "infirmities" in collateral review proceedings are not cognizable in § 2254 proceedings); Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990)("Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding."); Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir.) (alleged denial of effective assistance of counsel at Rule 27.26 hearing is not cognizable under § 2254), cert. denied, 469 U.S. 823, 83 L. Ed. 2d 45, 105 S. Ct. 100 (1984); Williams v. Missouri, 640 F.2d 140, 144 (8th Cir. 1981)("Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself, which we have found to be lawful."); see also 28 U.S.C. §2254(i)("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Therefore, Strong's claim of ineffective assistance of counsel for his collateral, post-conviction claims cannot stand.

Alternately, Strong's claim lacks merit because he cannot establish prejudice.

Even if Mr. Strong were to speak to former juror members, the information gathered would merely provide information as to the opinions of the jurors' regarding specific evidence. There is no indication how this information would relate to the peremptory strikes used against Ms. Stevenson or Mr. Bobo. Instead, the jurors' opinions would merely provide insight into their responses to the strategic decisions made by trial counsel.

There was evidence at the motion hearing that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. Counsel asked various detailed questions during voir dire, and all venire members were aware that the case involved stabbings and a young child. Defense counsel testified that he had never asked questions relating to photographs and mitigation during voir dire in other trials and that he believed that one could insult the intelligence of the venire members by suggesting the photographs alone would prevent them from considering the evidence. Counsel also stated that he had never shown such photographs in voir dire as he did not desire to overemphasize the gruesome nature of the crimes or alienate the jurors by focusing on the nature of the offense.

Trial counsel provided a reasonable explanation for his decisions and trial strategy. His performance complies with the "degree of skill, care, and diligence of a reasonably competent attorney" as is required to avoid a finding of ineffective assistance. <u>Glass v. State</u>, 227 S.W.3d 463, 468 (Mo. banc 2007) (quoting [<u>State v. Hall</u>, 982 S.W.2d 675, 680 (Mo. 1998)]). The motion court did not clearly err in denying counsel the opportunity to question jurors.

<u>Strong v. State</u>, 263 S.W.3d at 644.

The Missouri Supreme Court's opinion did not contravene clearly established federal law.

As noted by the state, federal law does not favor interviews with former jurors.

But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation -- to the destruction of all frankness and freedom of discussion and conference.

<u>McDonald v. Pless</u>, 238 U.S. 264, 267-68 (1915). Similarly, Fed.R.Evid. 606(b) generally precludes asking jurors about jury deliberations unless the inquiry relates to extraneous prejudicial information, outside influence on a juror or a mistake on a jury form. Accordingly, district courts have wide discretion to restrict contact with jurors to protect jurors from post-trial "fishing expeditions" by losing attorneys. <u>Journal Pub. Co. v. Mechem</u>, 801 F.2d 1233, 1236 (10th Cir. 1986)(quoting <u>United States v. Wright</u>, 506 F.3d 1293, 1303 (10th Cir. 2007)); <u>see also</u> <u>McDonald</u>, 238 U.S. at 269 ("the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict"); <u>United States v. Johnson</u>, 495 F.3d 951, 981 (8th Cir. 2007)(district court has discretion in managing allegations of juror misconduct); <u>see also</u> <u>United States v. Eagle</u>, 539 F.2d 1166, 1170 (8th Cir. 1976)(appellant had no right to subpoena jurors absent "specific allegations that any of them engaged in overt improper acts susceptible of proof"). Similarly, Missouri law regarding the testimony of jurors "is very much the same as Rule 606(b)." <u>Bannister v. Armontrout</u>, 807 F. Supp.

516, 544 (W.D. Mo. 1991)(refusing to admit affidavit of jurors to support capital habeas petitioner's claim that the jurors were improperly instructed); State v. Jones, 979 S.W.2d 171, 183 (Mo. banc 1998).

Here, Strong seeks to question jurors regarding their personal thoughts and feelings as they may have related to trial. Strong v. State, 263 S.W.3d at 644; Petition, pp. 67-68. Strong's inquiry does not relate to any claim of juror misconduct, prejudice or any error on the jury form. Fed.R.Evid. 606(b). Thus, any information obtained from the interviews with the jurors would be inadmissible during his post conviction hearing. Strong v. State, 263 S.W.3d at 643. Because none of the information from the jurors would have been admissible, Strong cannot show how this alleged error adversely affected his post-conviction proceeding and denied him due process. Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996) (errors alleged were not of such magnitude as to support a due process claim). Strong can show no unreasonable application of law. Strong's claim is meritless and is denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Richard Strong's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that because Movant cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

Dated this  29th  day of June, 2011.

_/s/ Jean C. Hamilton_

UNITED STATES DISTRICT JUDGE